## GRAHAM *v.* BOSTON, H. & E. R. Co. and others.

*(Circuit Court, D. Massachusetts. January 15, 1883.)*

1. CONSOLIDATED CORPORATION—DOMICILE.

Where a railroad corporation was made up of four distinct corporations, chartered by the legislatures of different states, and all consolidated and merged into one corporation under the laws of such states, and becomes one of that class of corporations owning a railroad extending through two or more states and chartered under the laws of each state, having a common stock, the same shareholders and officers, the same property, and a single organization, it is for most purposes one corporation. But it is a separate corporation in each state, in so far that it is governed by the laws of each state within its own territory, and is considered to have a domicile in each state, and, in the absence of any statutory provision to the contrary, may hold its meetings and transact its corporate business in either state.

2. EQUITY—RELIEF FROM DECREE OBTAINED BY FRAUD.

Where a decree or judgment has been obtained against a party to a suit at law or in equity by fraud or deception practiced upon him by the opposite party, and he has lost, without fault on his part, his remedy of applying to the court for the revocation or reversal of the decree or judgment, a court of equity will afford him relief.

3. SAME—RELIEF, WHEN NOT OBTAINABLE.

A circuit court of the United States cannot revise or set aside a final decree rendered by a state court, which had complete jurisdiction of the parties and subject-matter, upon the ground of fraud in obtaining the decree, where the injured party had an opportunity to apply to the state court to reverse the decree.

4. SAME—ADJUDICATION IN BANKRUPTCY—NOT IMPEACHABLE COLLATERALLY.

An adjudication of bankruptcy made by a district court, having jurisdiction of the bankrupt, cannot be impeached collaterally by any person who is a party to the bankruptcy proceedings. Where the plaintiff in a collateral action, and all the shareholders whom he represents, form an integral part of the corporation adjudged to be bankrupt, they are parties to the bankrupt proceedings and are bound by the decree, and cannot impeach it collaterally.

5. SAME—REMEDY PROVIDED BY STATUTE—SUPERVISORY JURISDICTION.

The only remedy provided for the correction of errors in such cases is to be found in the supervisory jurisdiction of the circuit court, as given by section 4986 of the Rev. St., upon bill, petition, or other process of any party aggrieved, which jurisdiction is exclusive; and the determination of the case by the circuit court, as in a court of equity, is not reversible in the supreme court.

6. LACHES—RELIEF IN EQUITY NOT OBTAINABLE.

Where a bill for relief was brought 14 years after the making of the railroad mortgage, 10 years after the commencement of bankruptcy proceedings against the railroad corporation, 9 years after the entry of the decree of foreclosure of the railroad mortgage, and 7 years after the decree of foreclosure became absolute, and the road was conveyed to the new corporation by trustees lawfully appointed, and during all this time the records of the courts, upon which appear all the proceedings by which the alleged fraud is claimed to have been

v.14,no.13—48

consummated, have been open to inspection and examination, and what has been done might have been known to plaintiff if he had made inquiry, a court of equity will not grant relief.

7. JURISDICTION.

Where a suit was instituted by an alien against a corporation, citizen of the state where suit is brought, the jurisdiction of the federal court is not defeated by the mere fact that a shareholder, a citizen of the state, was admitted by the court upon his own application as a co-plaintiff.

In Equity.

*Benj. F. Butler* and *R. A. Pryor*, for plaintiff.

*W. G. Russell* and *J. L. Thorndike*, for N. Y. & N. E. R. Co.

*J. C. Gray* and *W. C. Loring*, for assignees of B., H. & E. R. Co.

*C. M. Reed*, for executrix of Mark Healey.

NELSON, D. J. This is a bill in equity, filed July 8, 1880, by a shareholder in the Boston, Hartford & Erie Railroad Company, in behalf of himself and every shareholder and creditor of the company, to set aside as invalid a mortgage given by the company on its railroad, franchise, and property to Robert H. Berdell, Dudley T. Gregory, and John C. Bancroft Davis, as trustees, to secure the payment of an issue of the bonds of the company to the amount of $20,000,-000. The defendants are the Boston, Hartford & Erie Railroad Company, and its assignees in bankruptcy, the New York & New England Railroad Company, which is at present in possession of and operating the railroad, certain persons now living, and the personal representatives of others now deceased, who have, at different times, acted as trustees under the mortgage, the treasurer and receiver general of the commonwealth of Massachusetts, George Ellis, Frederick A. Lane, and W. C. Eayrs. The case was heard upon separate demurrers to the bill, filed by the New York & New England Railroad Company, by the assignees of the Boston, Hartford & Erie Railroad Company, by Hart & Clark, two of the trustees, and by the executrix of Mark Healey, a deceased trustee. Among the causes of demurrer, assigned by each of these defendants, are want of equity, laches, and want of jurisdiction in the court.

1. The ground upon which the plaintiff asks that the mortgage may be set aside and declared invalid is that it was made and authorized at a meeting of the shareholders held in the city of New York; that the corporation was not a corporation of the state of New York, but a corporation created by the statutes of Connecticut, Massachusetts, and Rhode Island, and the meeting ought to have been held in one or all of said states, and not in the state of New York; and

therefore the meeting was illegal, and all its acts and doings were null and void.

The bill sets forth that in December, 1865, there remained unbuilt of the company's line the portion between Waterbury, in the state of Connecticut, and Fishkill, in the state of New York, a distance of 74 miles, and also a portion in Connecticut between Willimantic and Mechanicsville, a distance of 26 miles, and the company found itself unable with its then means to further complete its road; that on the fourteenth of March, 1866, the company resolved to make a mortgage upon its road and property, and to issue bonds, to be secured by the mortgage, not to exceed the amount of $20,000,000 in all, for the purpose of retiring a then existing mortgage debt, and prior liens upon its road and property, amounting to $9,904,650, with accrued interest to that date, and to complete and equip its road.

In the mortgage itself, bearing date March 19, 1866, a copy of which is annexed to the bill, the corporation is described as "a corporation existing under the laws of the states of New York, Connecticut, Rhode Island, and Massachusetts." It is recited that—

" The shareholders of the Boston, Hartford & Erie Railroad Company, at a meeting duly and lawfully called and held at the city of New York, on the fourteenth day of March, A. D. 1866, voted to authorize the directors to make application to the several legislatures of the states in which the chartered rights of the road exist, for authority to make a mortgage upon the whole or any portion of the line of the road, and to create, issue, and dispose of, at the best rates that can be obtained, their convertible bonds, payable in the city of New York, on the first day of July, A. D. 1900, for $1,000 each, not to exceed the amount of $20,000,000 in all, with authority to the directors to make a portion of the bonds payable in London;" "interest payable semi-annually on the first days of January and July in each year, at the rate of 7 per cent. per annum; interest and principal to be payable at such places in the city of New York and in London as the directors may authorize; and the particular form of bonds, interest, warrants thereon, and mortgage to be left entirely at the discretion of the board of directors; the said bonds to be issued for the purpose of providing for and retiring all the existing mortgage debt and prior liens upon the line of the road of the party of the first part, and for the purpose of completing and equipping their road;" "that the board of directors, at a meeting duly convened and held in the city of New York on the nineteenth day of March, 1866, voted to authorize the creation and issue of the first-mortgage bonds of said company, in the following form," (a form of the bond is here inserted;) and that "the said directors, at their said meeting, further voted to empower bonds of said form * * * hereafter to be issued, and to be secured under the mortgage, * * * but not in a greater principal sum than $20,000,000 in all; * * * and further, at the same time, voted to secure the entire issue of said bonds by the execution of a mortgage in the form of these presents."

It then proceeds to convey to the trustees named the railroad of the company, commencing at the foot of Summer street, in Boston, and thence extending through the states of Massachusetts, Connecticut, Rhode Island, and New York to the western terminus of its location on the east bank of the Hudson river at Fishkill, together with all the privileges, franchises, and property then owned, or thereafter to be acquired, by the company.

By acts of the legislatures of Rhode Island, Massachusetts, Connecticut, and New York, passed soon after the date of the mortgage, the proceedings of the company in its execution were expressly ratified and confirmed, the same language being used in all the acts, as follows: "The proceedings of the Boston, Hartford & Erie Railroad Company, whereby, by indenture dated March 19, 1866, they conveyed their railroad and property in mortgage to Robert H. Berdell, Dudley S. Gregory, and John C. Bancroft Davis, trustees of bondholders in said mortgage mentioned, to secure the holders of said bonds the payment of the same, are hereby ratified and confirmed."

The bill further set forth that the Boston, Hartford & Erie Railroad Company was originally chartered by the legislature of Connecticut, by an act passed at its May session in 1863, and that subsequently acts were passed by the legislatures of Massachusetts and Rhode Island, making the company a corporation of those states also; that in August, 1863, the Southern Midland Railroad Company, having previously acquired all the franchises and property of the Boston & New York Central Railroad Company, a corporation chartered under the laws of Massachusetts, Connecticut, and New York, conveyed all its franchises to the Boston, Hartford & Erie Railroad Company; and that in November, 1863, the company, under authority given by the legislatures of all the four states, acquired the franchises of the Hartford, Providence & Fishkill Railroad Company, a corporation chartered under the laws of New York, Rhode Island, and Connecticut.

It further appears that under an act of the legislature of New York, passed April 25, 1864, entitled "An act to consolidate the Boston, Hartford & Erie, the Boston, Hartford & Erie Extension, and the Erie Ferry Extension Railroad Companies," (the two latter being New York corporations,) the Boston, Hartford & Erie Railroad ·Company acquired the rights of charter and property of both the New York corporations, with the authority to have, hold, and use the same in its own name and right as a portion of its railway line and property, and all the rights which the corporations had to con-

struct and operate a railway within the terminal points designated in their charters, subject to the laws of the state concerning railroad corporations.

It thus appears that the corporation was made up of several distinct corporations, chartered by the legislatures of the different states, and all consolidated and merged into one corporation under the laws of all the states. It therefore became one of that class of corporations, so numerous in this country, owning a railroad extending through two or more states, and chartered under the laws of each state. In such cases the corporation has a common stock, the same shareholders and officers, the same property, and a single organization, and is, for most purposes, one corporation. But it is a separate corporation in each state, so far that it is governed by the laws of each state within its own territory. Such a corporation is considered to have a domicile in each state, and, in the absence of any statutory provision to the contrary, may hold its meetings and transact its corporate business in each. *Bridge Co.* v. *Meyer*, 31 Ohio St. 317; Pierce, Railr 20.

To show that this was not a New York corporation, the plaintiff relies upon *Railroad Co.* v. *Harris*, 12 Wall. 65. In that case it was decided that the Baltimore & Ohio Railroad Company, a Maryland corporation, having obtained from the legislature of Virginia an act authorizing it to construct a railroad in that state, did not thereby become a Virginia corporation, the court holding that a Virginia statute, under its peculiar terms, did not create a new corporation, but was a mere enabling act to permit the Maryland corporation to do business in Virginia. See, also, *Railroad Co.* v. *Koontz*, 104 U. S. 5. But the New York statutes concerning this corporation are of quite a different character. They are not mere enabling acts, granting to a foreign corporation permission to transact its business within the state. They constitute it a New York corporation to the same extent as the legislation of Massachusetts, Connecticut, and Rhode Island make it a corporation in those states. If it is not a New York corporation, it is not one in the other states, and has no domicile, and upon the plaintiff's theory of the law could not hold a meeting of its shareholders in either state, or, for that matter, anywhere else. It is clear that a meeting of the stockholders, at which the mortgage was authorized, was lawfully held in New York, and that its proceedings were valid and binding on the company. To this it may be added that the confirmatory acts passed by the legislatures of the four states at the request of the shareholders, and acquiesced in for 14

years, would of themselves have been sufficient to cure the defect if it had existed. *Shaw* v. *Norfolk R. Co.* 5 Gray, 162; *Howe* v. *Freeman*, 14 Gray, 566. It is by no means clear, if the company had not been a New York corporation, and no confirmatory acts had been passed, that the proceedings of the meeting in New York would have been absolutely void; and it is still more questionable whether, after negotiating this loan upon the faith of a mortgage, which contained a recital that it was a New York corporation, either the corporation itself or its shareholders should be permitted to take advantage of the irregularity. But the conclusion already reached renders it unnecessary to consider these questions.

2. The bill further prays that if the court shall not, for the causes stated in the bill, declare the mortgage invalid, then, in the alternative, that the trusts under the mortgage may be established and confirmed, that the present trustees may be removed and new trustees be appointed to take possession of the mortgaged property, and hold it under the direction of the court for the benefit of the shareholders and creditors; and that an account may be taken of the earnings of the road. The mortgage contained provisions that in case of default by the company in the payment of either principal or interest of the mortgage bonds, the company should deliver possession of the mortgaged premises to the trustees, and that on taking possession, the trustees should file in the office of the secretaries of state of Massachusetts, Rhode Island, Connecticut, and New York, a written notice that they had taken possession for default in the payment of the principal, or interest, or both, as the same may be, and of their purpose to foreclose the mortgage for the default; that if the default should continue for the space of 18 months after such notice filed, the mortgaged premises should vest absolutely and in fee in the trustees, and the right of redemption of the company therein should be forever barred and foreclosed; that in case of an absolute foreclosure, it should become the duty of the trustees to call a meeting of the bondholders, by an advertisement of the time, place, and the object thereof, in newspapers published in Boston, Providence, Hartford, New York, and London, at which meeting the bondholders might organize themselves into a corporation under such corporate name as they might select, with a capital stock equal to the outstanding mortgage bonds; which new corporation should have all the powers, privileges, and franchises, and be subject to all the duties, liabilities, and restrictions, of the old company; and the trustees should thereupon convey to the new corporation all the mortgaged property and fran-

chises. The mortgage also contained provisions for the filling of va-
cancies in case of the death, resignation, or removal of any of the
trustees, and for the vesting in the persons so appointed all the mort-
gaged property. The following facts appear from the bill, and a rec-
ord of the supreme judicial court of Massachusetts for Suffolk county,
a copy of which is made part of the bill:

On the fifteenth of July, 1870, George Ellis and others filed their bill of com-
plaint in that court, sitting in equity, in behalf of themselves and all other
holders of the mortgage bonds, representing that they were the owners of 47
of the bonds, and of the interest warrants thereon, which had matured on the
first days of January and July of that year, and were unpaid, and praying for
the appointment of a receiver and for the foreclosure of the mortgage. On
the second of August, 1870, an order was entered in the cause, appointing re-
ceivers, and directing them to take possession of the road and property. On
the ninth of May, 1871, a decree was entered in the cause, in which, after re-
citing that the court on the twenty-fourth of April, 1871, had decided and
decreed that Moses Kimball, Thomas Talbot, and Avery Plumer were, in
law, the present trustees under the mortgage, it was adjudged and decreed by
the court that the receivers deliver into the possession and control of these
trustees, or their successors in office, all the roads, railways, property and fran-
chises which they had in their hands and possession, or under their management
and control as such receivers; that the trustees or their successors in office, upon
taking possession of the property, should file in the offices of the secretaries of
state of the four states the notices authorized by the mortgage; and if default
in the performance of the condition of the mortgage should continue for the
space of 18 months after the filing of such notices, the mortgaged property and
franchises should vest absolutely and in fee in the trustees and their succes-
sors, and all right or equity of redemption of the company therein should be
forever barred and foreclosed.

By a decree entered July 28, 1871, William T. Hart, George T. Oliphant, and
Charles P. Clark were appointed by the court trustees in place of Kimball,
Talbot, and Plumer, who had resigned, and were declared their successors in
the trust. Under these decrees the trustees entered into possession of the
mortgaged property, and on the sixteenth of September, 1871, filed in the offices
of the secretaries of state of the four states the notices of foreclosure, and, the
default still continuing, maintained their possession for a period of more than
18 months thereafter. On the eighteenth of March, 1873, they called a meet-
ing of the bondholders, as authorized in the mortgage, for the purpose of or-
ganizing themselves into a corporation. At this meeting, held in Boston on
the seventeenth of April, 1873, a corporation was formed under the name of
the New York & New England Railroad Company. By acts of the legislatures
of the several states, passed in May, 1873, the proceedings of the meeting were
ratified and confirmed, and the new corporation has since been in possession
of the road and franchises under a conveyance from the trustees authorized
by these statutes. The bill contains an averment that the Ellis suit has never
proceeded to a final determination and decree, and is still pending in court.

The case thus presented shows that prior to the filing of this bill, under a decree of a court of equity having jurisdiction of the parties and of the subject-matter, the mortgage had been completely foreclosed. To avoid the effect of the foreclosure, the bill charges that the Ellis suit was the result of a fraudulent conspiracy on the part of Ellis, the plaintiff, Lane, the president of the company, who represented it in its defense, and the receivers and trustees appointed by the court, entered into for the purpose of embarrassing the company and depriving it of its road and property; and that this fraud was perpetrated by submitting to the court false statements of facts for its decision, and thus obtaining a decree against the company. The bill does not allege in what particulars the statements of fact were false, nor does it allege that there was not a breach of the condition of the mortgage, nor that the plaintiffs were not the actual holders of the bonds and unpaid interest warrants, nor that any part of the interest which has accrued since 1869 has ever been paid, nor is there any offer or suggestion for redeeming the mortgage. There is no allegation that the new corporation, or any considerable number of the bondholders, had any knowledge of the alleged fraud. The obvious inquiry arises, at this stage of the case, why the plaintiff has not brought to the attention of the state court the fraud alleged to have been practiced upon it, and there sought to have the foreclosure decree revoked. It is well settled in the courts of the United States that when a decree or judgment has been obtained against a party to a suit at law or in equity by fraud or deception practiced upon him by his opponent, and he has lost, without fault of his, his remedy of applying to the court for the revocation or reversal of the decree or judgment, a court of equity will afford him relief. *U. S.* v. *Throckmorton,* 98 U. S. 611; *Metcalf* v. *Williams,* 104 U. S. 93.

In *Nougue* v. *Clapp,* 101 U. S. 551, it was held that the circuit court of the United States cannot revise or set aside a final decree rendered by a state court which had complete jurisdiction of the parties and subject-matter, upon the ground that the decree was obtained by fraud, where the injured party has had an opportunity to apply to the state court to reverse the decree. The plaintiff is a party to the foreclosure suit as a shareholder in the old corporation. The state court is still open to listen to the complaint of the corporation and its shareholders. The decree of foreclosure, though final in one sense, as determining the respective rights of the parties to the property in question, is still in its nature interlocutory, and is open to review by the court upon petition or motion in the cause, or by bill of review,

for good cause shown. Story, Eq. Pl. § 421, and note; *Evans* v. *Bacon*, 99 Mass. 213; Mass. R. S. c. 151, § 12. The plaintiff has, therefore, an ample and complete remedy for all his alleged grievances in the state court, and there is no occasion for his application to this court for relief by bill in equity. The decree of foreclosure, therefore, now in full force and unrevoked, is a bar to this suit.

3. On the twenty-first of October, 1870, a petition in bankruptcy was filed against the corporation by one Adams, claiming to be a creditor, in the district court of the United States for this district, upon which petition the corporation was adjudicated a bankrupt, and assignees were chosen, who are made defendants in this suit. After their appointment they conveyed to the new corporation all their interest in the mortgaged property. It is manifest that the right to all the relief which is prayed for in this bill passed to the assignees by force of the assignment from the district court, unless the effect of the adjudication in bankruptcy can be avoided upon the ground stated in the bill. This is admitted by the learned counsel for the plaintiff. The allegation is that the proceedings in the district court were fraudulent and collusive, and were a part of the conspiracy of Ellis, Lane, and others, to which the petitioning creditor also became a party, to wreck the road; and that the petitioning creditor's debt was insufficient to give the court jurisdiction.

An adjudication of bankruptcy, made by a district court having jurisdiction of the bankrupt, cannot be impeached collaterally by any person who is a party to the bankruptcy proceedings. Until vacated, in the manner prescribed by the bankrupt act, it is binding upon all the parties to it. The district court is always open for a re-examination of its decrees in an appropriate form. Any order made in the cause may be subsequently set aside and vacated upon proper showing made, provided rights have not become vested under it which will be disturbed by its revocation. The only remedy provided for the correction of errors in such cases is to be found in the supervisory jurisdiction of the circuit court. By section 4986, Rev. St., the circuit court is given general superintendence and jurisdiction of all cases and questions arising in the district court when sitting in bankruptcy, and, upon bill, petition, or other process of any party aggrieved, may hear and determine the case as in a court of equity. This jurisdiction is exclusive of all other courts, and is not reviewable in the supreme court. *Morgan* v. *Thornhill*, 11 Wall. 65; *Smith* v. *Mason*, 14 Wall. 419; *Sandusky* v. *Nat. Bank*, 23 Wall. 289; *New Lamp Chimney Co.* v. *Brass & Copper Co.* 91 U. S. 656; *Sanger* v.

*Upton,* 91 U. S. 56; *Milner* v. *Meek,* 95 U. S. 252; *Sweatt* v. *Railroad Co.* 3 Cliff. 339.

In *New Lamp Chimney Co.* v. *Brass & Copper Co.* the court say:

"A decree adjudging a corporation bankrupt is in the nature of a proceeding *in rem* as respects the *status* of the corporation; and, if the court rendering it has jurisdiction, it can only be assailed by a direct proceeding in a competent court, unless it appears that the decree is void in form, or that due notice of the petition was never given."

No such defect appears in these proceedings. The district court had jurisdiction to make the decree, and it has never been vacated. The plaintiff, and all the shareholders whom he represents, form an integral part of the corporation, and as such were parties to the bankruptcy proceedings. He is, therefore, bound by the decree, and cannot impeach it collaterally in this suit.

4. Another defense is laches. This bill was filed fourteen years after the making of the mortgage, ten years after the commencement of the bankruptcy proceedings, nine years after the entry of the foreclosure decree in the Ellis suit, and seven years after the foreclosure had become absolute, and the road conveyed to the new corporation by the trustees. During all this time the records of the courts, upon which appear all the proceedings by which the alleged fraud is claimed to have been consummated, have been open to inspection and examination, and what has been done under them might have been known to the plaintiff, if he had seen fit to make inquiry. In the mean time it is apparent that many persons must have acquired rights in the stock of the new corporation, who were ignorant of the alleged frauds. Under such circumstances, to set aside this mortgage, to disregard the decree of foreclosure and the adjudication in bankruptcy, and to take the road out of the hands of the bondholders, who have received no interest on their bonds since 1869, and to place it in the hands of receivers for the benefit of the shareholders in the old corporation, is a proposition so wild and preposterous as hardly to merit serious consideration.

5. The objection to the jurisdiction of the court remains to be considered. The bill alleges that the plaintiff is an alien, and resident of Inniskillen, in Ireland, and a subject of the kingdom of Great Britain and Ireland. Three of the defendants are citizens of the state of New York. After the appearance in the cause of the defendants who have filed demurrers, Peter J. Kelly, a shareholder and a citizen of the state of New York, was admitted by the court, upon his own application, to come in as a party plaintiff, for the protection

of his interests as a shareholder. The defendants contend that by admitting him as a party plaintiff the jurisdiction of the court was ousted. Assuming that the joinder as co-plaintiff of an alien and a citizen of the same state with some of the defendants would be fatal to the jurisdiction, the answer to the objection is that jurisdiction once having attached, it could not be defeated by the action of the court, without the consent or concurrence of the plaintiff. The plaintiff, as an alien, being personally qualified to bring the suit, the jurisdiction is not defeated by the fact that the parties whom he represents may be disqualified. *Coal Co.* v. *Blatchford,* 11 Wall. 172. The admission of Kelly, by leave of court, did not, in a jurisdictional sense, make him a plaintiff. He acquired thereby no control over the suit; Graham still remains the real plaintiff and *dominus litis,* and the suit must stand or fall on the case which he makes. Perhaps the court erred in admitting Kelly as a party. But that should not prejudice Graham, as it was not done at his instance.

As the court is of opinion, for the reasons already stated, that the demurrer, for want of equity and for laches, must be sustained, it becomes unnecessary to consider many other objections to the bill raised by the demurrers which were argued by counsel.

Demurrer for want of jurisdiction overruled; demurrer for want of equity and laches sustained.