UNITED STATES v. EISENBEIS et al.

LONG.et al. v. EISENBEIS et al.

(Circuit Court of Appeals, Ninth Circuit.   October 7, 1901.)

No. 691.

1. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—MATTERS IN ISSUE.
Under Act Aug. 1, 1888 (25 Stat. 357), authorizing the condemnation of land for sites of public building and for other purposes, a federal court in which proceedings are instituted by the United States for such condemnation acquires exclusive jurisdiction of all matters properly arising in such proceedings, and it is its duty to retain such jurisdiction and to determine all such questions; but the jurisdiction in such proceedings is special, and limited to the determining of matters which are material to and directly connected with the judgment sought to be obtained, and does not necessarily extend to a determination of the ownership of the land sought to be condemned, as between different claimants, to the exclusion of a state court.[1]

2. JUDGMENTS—EFFECT GIVEN BY FEDERAL COURTS TO JUDGMENT OF STATE COURT.
When the final judgment of a state court is offered in evidence in a proceeding in a court of the United States, its validity cannot be questioned for errors which do not affect the jurisdiction of the court which rendered it.[2]

3. ACTIONS—PROCEEDINGS CONSTITUTING COMMENCEMENT—FEDERAL COURTS.
In the federal courts jurisdiction does not attach, under the general rule, by the filing of a complaint and the issuance of summons, but only upon the service of process, and this rule is not controlled by the provisions of state statutes.

4. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—SUITS INVOLVING INDEPENDENT QUESTIONS.
Proceedings were commenced by the United States in a federal court to condemn lands for government purposes under the statute, and process was issued therein, but was not served on a defendant until after summons had been served on him in an action subsequently commenced in a state court by a third person to recover an interest in the land sought to be condemned. Held, that the state court acquired priority of jurisdiction to determine the title to the land, as between the parties before it, which did not, however, in any manner interfere with the jurisdiction of the federal court to proceed with the condemnation proceedings, which under the statute was exclusive, and that such court, after the land had been condemned, and the amount of the award had been paid by the United States into its registry, properly gave effect to the judgment of the state court in the distribution of such award.[3]

5. SAME.
The fact that, at the time the issues were made up in the state court and the cause tried, the title to the land had passed to the United States by virtue of the condemnation proceedings, and the amount awarded as compensation therefor was in the registry of the federal court, did not affect the jurisdiction of the state court to determine the rights of the parties before it therein; nor did the fact that the custodian of the fund was not a party.

---

[1] Conflicting jurisdiction of federal and state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.

[2] Conclusiveness of judgments as between federal and state courts, see note to Railroad Co. v. Morgan, 21 C. C. A. 478.

[3] Pendency of action in state or federal court as ground for abatement of action in the other, see note to Bunker Hill & Sullivan Mining & Concentration Co. v. Shoshone Min. Co., 47 C. C. A. 205.

In Error to the District Court of the United States for the Northern Division of the District of Washington.

See 88 Fed. 4.

The writ of error herein brings before this court the proceedings had in the case of the United States against Eisenbeis et al. in the United States district court in and for the district of Washington, and also certain proceedings had in the state court in Jefferson county, state of Washington, in the suit of Charles Eisenbeis and Kate Eisenbeis, plaintiffs in error herein, against B. M. Long, Clementine Long, and Francis L. Bash, defendants in error herein. The facts relating to these suits, brought in different jurisdictions, are as follows: On February 4, 1898, the United States brought suit against Eisenbeis et al. (including many individuals and corporations) to condemn and appropriate to the use of the government, for fortification purposes, a large quantity of land at Ft. Wilson, Jefferson county, Wash., including 84.61 acres of vacant and unoccupied land specially involved herein, the legal title to which was in Charles Eisenbeis, but in which the defendants in error Long et al. claimed an undivided one-half interest. Process in this action was served on Bash, Eisenbeis, and wife on February 7, 1898. Long and wife voluntarily appeared in the action on March 16, 1898. In due time the case came up for trial before a jury, and a verdict was rendered assessing the compensation and damages to the owners of the 84.61 acres of land at $18,900; and, in pursuance of a decree regularly entered, that amount was paid into the registry of the court for the owners, and the land was taken and appropriated by the United States government. There being no controversy as to the ownership of Eisenbeis and his wife as to one-half of said money, that amount was thereafter, on their motion, paid over to them. The remaining one-half was claimed on one side by Eisenbeis and wife, plaintiffs in error herein, and on the other by B. M. Long, Clementine Long, and Francis L. Bash, defendants in error herein. In 1893 the defendants in error herein brought suit in the state superior court of Jefferson county, Wash., against the plaintiffs in error herein and Henry Bash and Susan W. Bash, to recover one-half of certain lands embraced in the condemnation proceedings. In that suit it was alleged in the complaint that Henry Bash and Eisenbeis had entered into a written agreement, by the terms of which they were to acquire said lands (not including the said 84.61 acres), and plat them into town lots, sell them, and out of the proceeds repay to Eisenbeis the purchase price of said lands, which he was to advance, and all expenses of platting and selling the same, and divide the profits equally between them. It was further alleged in the complaint that by a subsequent oral agreement it was agreed between Bash and Eisenbeis that the 84.61 acres should be purchased, platted, and sold, and the proceeds divided under and in accordance with the written agreement. The written agreement was admitted by Eisenbeis; but he denied that there had ever been any such oral agreement as alleged in the complaint, or any oral agreement for the acquisition of the 84.61 acres for Bash or Eisenbeis at all. The cause was tried and a final decree rendered on November 1, 1895, finding the written agreement to have been made, and adjudicating the rights of the parties under it, and dividing the money on hand and the unsold lots and blocks covered by it accordingly; but there was no finding or decree whatever concerning the oral agreement, or concerning the 84.61 acres of land. That decree was never appealed from, reversed, set aside, or in any way modified or affected. On February 7, 1898, three days after the condemnation proceedings had been filed in the United States court, the defendants in error herein filed in the state superior court of Jefferson county, Wash., a complaint against the plaintiffs in error herein, based upon the same written agreement between Henry Bash and Eisenbeis, and the same alleged oral agreement modifying and extending said written agreement so as to cover and include the 84.61-acre tract of land, and claiming an undivided one-half interest therein. Process in this suit was served on Eisenbeis and wife February 7, 1898. They appeared and set up the former decree in the state court between the same parties as a plea in bar. To this plea the plaintiff demurred. The demurrer was overruled by the court. The plaintiff there-

upon appealed to the supreme court of Washington, which reversed the judgment of the lower court, holding that nothing was concluded by the former judgment except such facts as were set out in the judgment itself. Long v. Eisenbeis, 21 Wash. 23, 56 Pac. 933. The cause was returned to the court below, and the plaintiffs then filed an amended and supplemental complaint in which they set forth their original complaint, and attached as exhibits the findings, judgment, and decree in the former suit, in which judgment was rendered November 1, 1895, and also alleged the pendency of the suit in the United States district court to condemn the land, and that the land had been condemned and the money paid into court, and that that court would abide the judgment of said superior court, and pay out the money accordingly, and prayed for a decree that the plaintiffs were the owners of an undivided one-half interest in the land at the commencement of that suit, and that they were the owners of said fund in the registry of said United States court. The parties to the last-mentioned suit were the same parties as in the suit resulting in the judgment of November 1, 1895. The land sued for was a part of the same land sued for in the said former suit. The cause of action was the same, based upon the identical agreements by Bash as in the former suit. The custodian of the fund in the federal court was not made a party; nor was any one made a party who had any control whatever over that fund, or against whom any judgment or decree concerning said fund could be enforced. To this amended and supplemental complaint Eisenbeis demurred on various grounds: (1) That the amended and supplemental complaint did not state facts sufficient to constitute a cause of action; (2) that there was a defect of parties defendant; (3) that the state court had no jurisdiction of the cause. The demurrer was overruled, and on December 5, 1899, final judgment was rendered for plaintiffs as prayed, and defendants appealed to the supreme court of the state, where the judgment was affirmed. This judgment, with reference to the matter here in dispute, reads as follows: "The remaining one-half of said money for said land, to wit, the sum of nine thousand one hundred and fifty-nine dollars and seventy cents ($9,159.70), is still in the said United States district court in said condemnation suit, and that said remaining sum of nine thousand one hundred and fifty-nine dollars and seventy cents ($9,159.70) has taken the place of and represents the said undivided half interest in and to said eighty-four and $61/100$ acres of land herein described of these plaintiffs, B. M. Long, Clementine Long, his wife, and Francis L. Bash, and that the said defendants Charles Eisenbeis and Kate Eisenbeis, his wife, have no right, title, interest, or claim in or to said remaining sum of nine thousand one hundred and fifty-nine dollars and seventy cents ($9,159.70), nor to any part thereof, and that these plaintiffs are the absolute owners thereof, and entitled to all of said remaining sum in the said district court." Afterward Long et al., defendants in error herein, came into the United States district court, and filed their petition praying that said fund be paid to them, as the owners thereof, and attached to their petition copies of said amended and supplemental complaint, and of the judgment of the superior court in Jefferson county, Wash., rendered November 1, 1895, and also the judgment of the same court rendered December 5, 1899, and the opinion of the supreme court of the state affirming said last-mentioned judgment. To this petition the plaintiffs in error Eisenbeis and wife filed their answer, claiming said fund, and praying that the same be paid to them, and set forth the pleadings, finding, and judgment of the superior court of Jefferson county, Wash., rendered on November 1, 1895, as a bar to the claim of the petitioners, Long et al. To this answer Long et al., petitioners (defendants in error), filed a general demurrer, which was sustained, and the answer held insufficient. Thereupon the court found that the petitioners were the owners of the fund in the registry of the court, and adjudged and decided that the same be paid to them. From this judgment and decree Eisenbeis and wife sued out a writ of error to this court.

A. R. Coleman and Wm. H. Brinker, for plaintiffs in error.

Allen Weir, T. J. Humes, A. W. Buddress, and L. S. B. Sawyer, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the facts as above, delivered the opinion of the court.

The arguments of counsel covered a wide range of legal principles, and innumerable authorities were cited by them in support of their respective views. The various assignments of error herein are based upon the action of the United States court in sustaining the demurrer to the answer of the plaintiffs in error, and raise the question as to the jurisdiction of the respective courts, national and state, in the various proceedings set forth in the statement of facts concerning the subject-matter of the controversy between the parties. The contention of the plaintiffs in error, as claimed by counsel, embodies the following propositions: (1) That the act of congress conferred jurisdiction upon the United States court to condemn land for governmental purposes. (2) That the proceedings to condemn were special proceedings, and the jurisdiction conferred was special to the particular courts named, and that jurisdiction was exclusive. (3) That, the jurisdiction to condemn being exclusive, the jurisdiction to award and distribute the damages or compensation for the land, including the decision of the question as to who was entitled to such damages or compensation, was an incident to the principal cause, and likewise exclusive. (4) That the government, having filed its petition to condemn the land in the United States district court on February 4, 1898, then and there drew into that court the res, and with the res the jurisdiction, power, and duty to hear and determine every question which could be raised in that proceeding, including the decision of the ownership of the fund in court. (5) That after the suit was commenced the state court had no jurisdiction to entertain the suit commenced by Long et al. against Eisenbeis et al. on February 7, 1898, concerning the title to said land or its proceeds in the United States court, nor to determine any question therein, and that its so-called judgment of December 5, 1899, was and is void. (6) That said state court was without jurisdiction to decide any question or render any judgment in said suit of February 7, 1898, affecting said fund in the federal court, because the custodian of said fund was not made a party to said suit. (7) That said state court was without jurisdiction to entertain said suit of February 7, 1898, or to render any judgment therein, because there was already a judgment of the same court, between the same parties, upon the same cause of action, concerning the same subject-matter, rendered on November 1, 1895, and which remains unreversed and unmodified. (8) That the cause of action between Long and Eisenbeis was merged in the judgment of November 1, 1895, and that judgment was a complete bar to said suit of February 7, 1898, and to said so-called judgment of December 5, 1899, in said state court, and in the court below, and in every other court. (9) That the right and title to the land having been adjudicated between the parties in the judgment of November 5, 1895, that judgment was the only competent

evidence before the court below as to the ownership of the fund in court, and was conclusive.

It will not be necessary to discuss these propositions seriatim. It will be sufficient to declare the views we entertain, and state our conclusions in regard to the question whether or not the United States district court erred in sustaining the demurrer of the defendants in error to the answer of the plaintiffs in error to the petition of the defendants in error for the distribution of the funds in the registry of the court. The main contention and controversy in regard to this ruling of the court relates to the question whether or not the state court in Jefferson county, Wash., had jurisdiction of the suit commenced therein on February 7, 1898, of the subject-matter thereof and parties thereto. The general rule is well settled that, where different courts have concurrent jurisdiction, the court which first acquires jurisdiction of the parties, the subject-matter, the specific thing, or the property in controversy, is entitled to retain the jurisdiction to the end of the litigation, without interference by any other court. It is the duty of the court which first obtains full and complete jurisdiction over the whole case to keep control of it, to the exclusion of the other court that had not obtained such full jurisdiction, and to grant the relief prayed for. This general principle is well settled. The only difficulty lies in its application to the facts of any given case. The authorities in its support are very numerous, embracing a great variety of subjects and different kinds of actions, and presenting the question in all of its various forms and phases. Many of them are cited in Rodgers v. Pitt (C. C.) 96 Fed. 668, 670, et seq.; Id., 43 C. C. A. 600, 104 Fed. 387, 389,—to which reference is here made. In the present case the entire subject-matter of the various suits and proceedings referred to in the statement of facts was not within the concurrent jurisdiction of the national and state courts. Proceedings instituted to condemn land are usually designated as special "statutory proceedings," wherein the court exercises a limited and statutory jurisdiction, and usually confines the issues to those matters which are material to, and directly connected with, the judgment sought to be rendered therein. The ordinary controversies arising in proceedings of this character are (1) the right of the party instituting the same to condemn the land, which is a question for the court to decide; (2) to have the value of the land assessed by a jury, or by commissioners appointed for that purpose. In many cases it has been expressly held that the value of or damage to the land is the only question that should be submitted to the jury. 7 Enc. Pl. & Prac. 573, and authorities there cited. It is the duty of the court to whom jurisdiction is given to take such steps and pursue the practice provided for in the statute. It must therefore be evident that the state court had no jurisdiction over the condemnation proceedings in the present case,—certainly not as to the right of condemnation of the land involved and the awarding of proper damages therefor. The national court acquired exclusive jurisdiction thereof by virtue of the act of congress entitled "An act to authorize condemnation of land for sites of public buildings, and

for other purposes," approved August 1, 1888 (25 Stat. 357; 1 Supp. Rev. St. 601). But it does not necessarily follow, by the commencement of such proceedings in the national court, that the title to the land, if in dispute, must be tried therein, and cannot be tried, heard, and determined in any other court.' This is a matter over which the state courts have jurisdiction, especially where, as here, the parties adversely claiming title to the land are all residents of the state wherein it is located. But conceding, for the purposes of this opinion, that the national court had jurisdiction to determine who owned the land, or to determine who were entitled to the fund in the registry of the court, which stood in the place of the land, it is apparent that its jurisdiction in this respect was not in any manner interfered with by the state court. The national court did exercise its jurisdiction, and based its decision upon the result of the litigation in the state court concerning the title, which was properly brought to its attention by the petitioners, Long et al., in their application to have the fund paid to them. The jurisdiction of the state court to try the title to the property depended upon the condition of the parties, property, and affairs connected therewith, at the time of the commencement of the suit, when its jurisdiction was invoked; and, its jurisdiction having attached to the parties and the subject-matter of the litigation, the subsequent happening of events concerning the same, even if they were of such a character as would have prevented jurisdiction from attaching in the first instance, would not operate to oust the jurisdiction already regularly attached. In re Chetwood, 165 U. S. 443, 460, 17 Sup. Ct. 385, 392, 41 L. Ed. 782, 788; Bank v. Stevens, 169 U. S. 432, 459, 18 Sup. Ct. 403, 413, 42 L. Ed. 807, 817; 12 Enc. Pl. & Prac. 171, and authorities there cited. If the suit in the state court had been commenced and prosecuted to final judgment prior to the time of the filing of the government's petition for the condemnation of the land in question, there could not be any controversy as to its binding force and effect upon the parties thereto, and upon the national court, in passing upon the question as to who was entitled to the fund that had been paid into the registry of that court. Certainly no question could have been urged against the correctness of the decision of the state supreme court. If the state court obtained jurisdiction of the subject-matter of the suit, to determine the title to the land, prior to the time when the national court obtained jurisdiction over the parties in the condemnation proceedings, the result is the same. This court cannot review the decision of the supreme court in Long v. Eisenbeis, 21 Wash. 23, 56 Pac. 933. Whether right or wrong, it is binding and conclusive upon the parties to the present controversy. No party to a decree or judgment in a state court concerning a matter subject to and within its jurisdiction can attack it collaterally in any action, suit, or proceeding commenced in a national court after the jurisdiction of the state court had attached. When the final judgment of a state court is offered in evidence in a suit or proceeding in a court of the United States, its validity cannot be questioned for errors which do not affect the jurisdiction of the court which ren-

dered it. These general principles are well settled. Bryan v. Kennett, 113 U. S. 179, 198, 5 Sup. Ct. 407, 416, 28 L. Ed. 908, 914; Trust Co. v. Seasongood, 130 U. S. 482, 491, 9 Sup. Ct. 575, 578, 32 L. Ed. 985, 988; Simmons v. Saul, 138 U. S. 439, 452, 11 Sup. Ct. 369, 373, 34 L. Ed. 1054, 1059; Southern Pac. R. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355; Mitchell v. Bank, 180 U. S. 471, 480, 21 Sup. Ct. 418, 421, 45 L. Ed. 627; Graham v. Railroad Co. (C. C.) 14 Fed. 753, 760; Walker v. Sturbans (C. C.) 38 Fed. 298, 300; Elder v. Mining Co., 7 C. C. A. 354, 58 Fed. 536, 539; Foltz v. Railroad Co., 8 C. C. A. 635, 637, 60 Fed. 316, 318, and authorities there cited; Mining Co. v. Old, 25 C. C. A. 116, 210, 79 Fed. 598, 603.

Applying these general principles to the facts of this case it is clear that the plaintiffs in error are estopped from asserting any interest in the land, or money in the registry of the court which takes its place, adverse to the defendants in error. They cannot in these proceedings attack the judgment of the state court, because, as was said in Bryan v. Kennett, supra:

"It is not subject to collateral attack, because there is nothing on the face of the record which shows any want of jurisdiction in the court that rendered it. It was and is conclusive, as to all the parties to that suit and their privies, until reversed or modified on appeal, or unless, in proper time, it had been impeached in some direct proceeding, and set aside or annulled."

But it is claimed that the state court had no jurisdiction of any matter involved in the condemnation proceedings, because they were commenced in the national court three days before the suit in the state court was commenced. This contention is sought to be maintained upon the ground that under the statutes of the state of Washington a suit is commenced "by the service of a summons * * * or by filing a complaint with the county clerk." Laws Wash. 1895, p. 170. The answer to this is that the national courts are not governed or controlled in this matter by the provisions of the state statutes. In the national courts the jurisdiction does not attach, within the meaning of the general rule, by the filing of a complaint and the issuance of the summons. It only attaches upon the service of process. Owens v. Railroad Co. (C. C.) 20 Fed. 10, 12; Rodgers v. Pitt (C. C.) 96 Fed. 668, 673, and authorities there cited. We must therefore look to the service of process, in order to ascertain which court first obtained jurisdiction. Upon the facts set forth in the statement relative to the time of the service of process, it is apparent that the state court first obtained jurisdiction to try the title to the property as between the parties. It never acquired any jurisdiction for condemnation purposes, and never attempted to exercise any. The national court never surrendered its jurisdiction over the condemnation proceedings, or any part or portion thereof. It retained jurisdiction of the land, and of the money which took its place, until the final order was made as to its disposition. The custodian of the fund in the national court was not a necessary party to the proceedings in the state court. All that the state court did was to try the title to the land. The result of the judgment therein enabled the national court to make a proper disposition of the fund

over which it had full and complete jurisdiction, possession, and control. The fact of two different courts not having concurrent jurisdiction over the whole case, but each having, within its own sphere, jurisdiction to decide certain independent questions which would be binding upon both parties, and upon the other court in its disposition of those questions in the trial of the whole case, has been frequently recognized. Suydam v. Broadnax, 14 Pet. 67, 10 L. Ed. 357; Bank v. Jolly, 18 How. 503, 15 L. Ed. 472; Green v. Creighton, 23 How. 90, 106, 16 L. Ed. 419, 423; Buck v. Colbath, 3 Wall. 334, 345, 18 L. Ed. 257, 261; Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260, 262; Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Boom Co. v. Patterson, 98 U. S. 403, 406, 25 L. Ed. 206; Hess v. Reynolds, 113 U. S. 73, 77, 5 Sup. Ct. 377, 28 L. Ed. 927; Borer v. Chapman, 119 U. S. 587, 600, 7 Sup. Ct. 342, 30 L. Ed. 532; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Wickham v. Hull (C. C.) 60 Fed. 326, 330; In re Foley (C. C.) 76 Fed. 390; Brendel v. Charch (C. C.) 82 Fed. 262.

In Buck v. Colbath, supra, the court said:

"But it is not true that a court, having obtained jurisdiction of a subject-matter of a suit and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having very close connection with those before the first court, and in some instances requiring the decision of the same questions exactly."

In Byers v. McAuley, supra, the court held that the state court had exclusive jurisdiction of the administration of the estate of deceased persons, and that the national court had no jurisdiction over such proceedings. It further held that the national court might, however, take jurisdiction of, hear, determine, and adjudge the claim of citizens of another state against the estate, and that this determination would be binding upon the state court in the settlement and distribution of the property of the estate, but it could not adjudicate the claims which the citizens of the state might have against the estate, or make any order looking to the mere administration of the estate. The course pursued by the national court in the condemnation proceedings was authorized by the provisions of the statute of the United States heretofore cited, the second section of which reads as follows:

"The practice, pleadings, forms, and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding."

The court followed the modes of procedure in like causes in the state court, as it was required to do by the statutes of the United States. The procedure in such cases is provided for in the statutes of Washington (Hill's Ann. St. & Codes, §§ 653–656). Section 654 is as follows:

"Upon the entry of judgment upon the verdict of the jury, * * * awarding damages, * * * the petitioner, * * * may make payment of the damages * * * and of the costs * * * by depositing the same with the clerk * * * to be paid out under the direction of the court, or judge thereof, and upon making such payment into the court * * * such corporation shall be released and discharged from any and all further liability therefor."

Section 655 provides:

"Any person, corporation, * * * claiming to be entitled to any money paid into court, as provided in this chapter may apply to the court therefor, and upon furnishing evidence satisfactory to the court that he or it is entitled to the same, the court shall make an order directing the payment to such claimant, the portion of such money as he or it shall be found entitled to; but if, upon application, the court or judge thereof, shall decide that the title to the land * * * specified in the application of such claimant, was in such condition as to require that an action be commenced to determine the conflicting claims thereto, he shall refuse such order until such action is commenced, and the conflicting claims to such lands * * * be determined according to law."

The object of the condemnation proceedings, as shown by the complaint of the United States, was to have a jury impaneled—

"To assess the value of the said premises, and the damages to be awarded against plaintiff herein; that all the right, title, and interest of the said defendants and all persons whomsoever be condemned, appropriated, and acquired by this plaintiff; that, upon proper proceedings being had herein, the title of said lands be vested in this plaintiff, and in it confirmed."

Pending the proceedings the plaintiff in error herein entered into a stipulation with an officer of the government that the lands in question were of the value of $225 per acre—

"Which sums and amounts, respectively, it is hereby stipulated and agreed the said jury may return as the value of said property and the measure of damages to the owners of said property, and which said amounts may be paid into the registry of said court by the government after the said verdict or verdicts are rendered by the jury as aforesaid, and thereupon all the right, title, and interest of the said Charles Eisenbeis and Kate Eisenbeis, his wife, shall vest and become confirmed in the United States of America. It is understood that there are other claimants to the lands claimed by the defendants Charles Eisenbeis and Kate Eisenbeis herein, or to portions thereof, and by this stipulation it is not intended that the United States concedes the ownership of the lands hereinbefore described to be in said defendants Charles Eisenbeis and Kate Eisenbeis, but the purpose and intention of this stipulation is to fix and agree upon the value of the lands claimed by said defendants, and hereinbefore described; and it is understood that the moneys for said lands, in accordance with the verdicts that the jury may return, shall be paid into the registry of the court, and these defendants, and any other parties who claim to have any right, title, or interest in said lands, or any of them, may make their application to the court for the distribution of said money to such persons and in such manner as the court may adjudge proper."

The jury to whom the matter was submitted found a verdict assessing the land in controversy at a total valuation of $18,900, and assessed the damages to the owner thereof for the taking of the same by the plaintiff herein at the sum of $225 per acre. "We further find from the evidence herein that the title to the said property is in Charles Eisenbeis and Kate Eisenbeis, his wife, subject to the litigation and claim of H. Bash, Susan Bash, B. M. Long, Clementine Long, and Francis L. Bash, and that there is no other tenant, incumbrancer or person interested in any manner in the ownership of the said property, excepting Jefferson county has a lien for taxes thereon."

No objections were ever made by the plaintiffs in error herein to the proceedings in the state court to try the title to the property until after the final judgment was rendered therein. No de-

mand was ever made by them to have the title to the property determined by a jury in the United States district court. The court accepted the judgment of the state court as to the ownership of the land as final, and refused to retry that question. Under the circumstances, it had no power or authority to try that question, because it had already been tried, settled, and determined in a court of competent jurisdiction. The fact that execution upon the judgment in the state court could not have been levied upon the money in the registry of the national court, which had taken the place of the land, does not destroy or in any manner affect the validity of the judgment which determined the rights of the respective parties. Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Byers v. McAuley, supra; Wickham v. Hull (C. C.) 60 Fed. 326. After the land was condemned and the damages awarded, the United States had no further interest in the proceedings. By the payment into court of the amount of damages awarded by the jury, the government was discharged from its liability, and was no longer a party to the proceedings. U. S. v. Dunnington, 146 U. S. 338, 352, 13 Sup. Ct. 79, 83, 36 L. Ed. 996, 1001.

The rulings of the court in sustaining the demurrer interposed by the defendants in error, and ordering the money in the registry to be paid to them, were correct.

The judgment of the district court is affirmed, with costs.