FRANK WALTON, Respondent, v. PARKE GODWIN, Appellant.

*Annual report of a corporation — what false statement as to the capital paid in, is not a material false statement, rendering the officers signing the report liable for its debts.*

In an action brought to charge one of the directors of the American Opera Company (Limited) with a debt existing against such company, upon the ground that the annual report filed by such company was false in its statements concerning the amount of capital stock which had been paid in, it appeared that one Henry Seligman, who was named in the report as one of the stockholders, was not, and never had been, the owner of stock in the corporation; that a certificate for ten shares of stock, amounting to the sum of $1,000, had been sent to him, which he had refused to accept and had returned, and that this amount, as well as an additional sum of $1,000, for which there was no foundation whatever, was included in the amount of the capital stock of the company stated in the report to have been paid in.

*Held,* in view of the fact that the jury might have found that $146,600 of the capital stock of the company had been paid in, that this error, to the extent only of $2,000, did not make the report "false in any material representation."

That this slight discrepancy could have had no effect whatever upon the connection or dealing of its creditors with the corporation, and that, therefore, the statement could not be a material false statement, rendering the officers who signed the report liable for the debt of the company.

Appeal by the defendant from a judgment in favor of the plaintiff, entered on the verdict of a jury rendered at the New York Circuit, in the clerk's office of the county of New York on the 24th day of January, 1890, and from an order, dated and entered January 31, 1890, in said clerk's office, denying defendant's motion made upon the minutes of the presiding judge to set aside the verdict and grant a new trial.

*Nelson Smith,* for the appellant.

*William W. Badger,* for the respondent.

Daniels, J.:

The verdict was rendered for the sum of $4,122.73, against the defendant as one of the directors of the American Opera Company (Limited). The company was incorporated under the authority of chapter 611 of the Laws of 1875. On the 17th day of January, 1887, the annual report of the company was made, and it was filed on the twentieth of February of the same year. This report was signed by the defendant, together with other persons, and the state-

ments contained in it concerning the amount of capital stock which had been paid in, and the names of persons who are stated to have been stockholders were alleged to be untruthful. And it was on that ground that the plaintiff, as the assignee of Henry Bates, was permitted to recover the verdict upon which the judgment was entered. This verdict was recovered for the amount found to be owing to Henry Bates under a contract made by the company with him on or about the 22d of October, 1886. He was employed in the capacity of a tenor singer at the salary of $125 weekly. He performed no actual service in the capacity in which he had been employed, and he was discharged early in December, 1886. The contract made with him was for a season of thirty weeks, commencing in November, 1886, and it was for the amount of the damages resulting from the refusal to perform the agreement on the part of the company that the verdict in the action was rendered. It appeared in support of the action that the plaintiff had previously recovered a judgment for the same demand against the company itself, and that execution had been issued upon the judgment and returned unsatisfied.

The defendant resisted the action on the ground, among others, that Bates had been discharged from the service of the company by reason of his incompetency. And it had been agreed by the sixth rule, which was made a part of the contract of employment, that he might be discharged in the event that he proved to be an incompetent person. And it was declared in this rule that " the vocal and musical directors shall be the sole judges of the fact and extent of the incompetency in applying this rule." One of the musical directors was examined as a witness upon the trial and testified that rehearsals were had in which Bates took his part, and that he was determined to be an incompetent person by the musical directors, and for that reason was discharged. But the accuracy of this statement was controverted upon the trial. And Mr. Bates himself testified, and so did his wife, that the rehearsals took place prior to the signing of the contract, and that upon their completion he was directed to go and sign the agreement, and that it was so signed on the 25th, or between that and the 27th of October, 1886. The evidence of the plaintiff himself had the like tendency to establish the fact to be that the rehearsal in which Bates was engaged took place

before the making of the agreement, and that there was no examination or rehearsal in which he was afterwards engaged upon which the musical directors determined him to be incompetent. On this evidence the court submitted the question to the jury whether the incompetency of Bates was determined upon by the musical directors for or on account of any incompetency appearing in him after the signing of the agreement. If there was, then the court directed the jury that they should find a verdict in favor of the defendants. But if the rehearsals took place prior to the signing of the contract, then it was held that there had been no such discharge under the agreement as would entitle the defendant to a verdict. And these directions appear to be supported by the agreement itself, and the rule made a part of it. For it contemplated the fact that the incompetency should be subsequently ascertained or discovered to justify the dismissal of Bates from the service of the company. This is the clear import of the agreement and the rule, taken and construed together. And the jury must have been satisfied that no incompetency was found in Mr. Bates after the agreement had been entered into, and that he had not been discharged from the service of the company because of that fact.

In the submission of the case to the jury the judge presiding at the trial directed them that the defendant was liable, in case they found that Mr. Bates had not been discharged under the authority of rule sixth, for the reason that the report was untruthful. And to that an exception was taken on behalf of the defendant. In support of the action it was alleged that the report untruthfully stated that $148,600 of the capital stock had been actually paid in, and that the several persons who were named as stockholders were not the owners of any stock of the corporation. These were matters which section 18 of chapter 611 of the Laws of 1875 required to be stated in the report. That section required a report " which shall state the amount of capital, and the proportion actually paid in, * * * and the names of its then existing stockholders." And it was proved upon the trial that Henry Seligman, who was named in the report as one of the stockholders, was not and never had been the owner of stock in this corporation. It was also shown that the report was made upon the basis that Seligman

was one of the owners of stock in this company. While it appeared from the testimony of Clifford D. Jaffray, who was at first the bookkeeper and afterwards the paymaster of the company, that Mr. Seligman never became the owner of stock in the company; that a certificate of stock was sent to him which he declined and returned. His certificate included ten shares of stock amounting to the sum, as it is to be inferred from the case, of $1,000. And it was proved that this amount, as well as an additional $1,000, for which there was no foundation whatever, were included in the report as part of the capital of the company which had been paid in. Evidence was also given to the effect that other persons named in the report as stockholders in the company were not the owners of the stock charged to them. But as to these persons the books of the company were produced stating them to be the owners of the stock which it was asserted had been issued to them. And the secretary of the company in verifying the report appears to have included these persons as the owners of stock in the company. This report, as well as the books produced and read in evidence, tended to establish the fact that as to these other persons they were the owners of the shares appearing in their names. And as they were interested in maintaining that they were not the owners of such shares, and their denials were in conflict with this other evidence, the court could not direct a verdict upon the testimony given by them to this effect. But if it had been important to ascertain whether they were the owners of the shares appearing in their names, that fact should have been submitted to the jury. But as to Mr. Seligman there was not only his own testimony that he was not the owner of stock in the company, but, in addition to that, the evidence of Mr. Jaffray, who was entirely disinterested. And it did not appear on the books of the company that this person was the owner of any of its stock.

By section 21 of chapter 611 of the Laws of 1875 it has been provided that if any certificate or report made, or public notice given, by the officers of any such corporation shall be false in any material representation, all the officers who have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof. And by the preceding section 18 the amount of the capital actually paid in, and

the names of the persons who are stockholders at the time when the report shall be made, are required to be truthfully stated in it. But, from the evidence which was given at the trial, it could only be assumed by the court that the report was untruthful, to the extent of the sum of $1,000, in stating the amount of capital actually paid in, and the further sum of $1,000 represented to be the proceeds of the shares issued to Seligman. And as to this first $1,000 there was evidence tending to show it had probably resulted from an error in the footing of the items. And that Mr. Seligman was not the owner of stock in the company was a fact appearing beyond ground of controversy. And as the case was tried, it is upon these two facts that the liability of the defendant must be maintained if it is maintained at all. And it accordingly, under section 21 of the act, depends upon the question whether these statements were materially false representations. The law has not defined what shall or shall not be material representations in the report, but that must be determined from the consideration of the act and the nature and object of the report itself. The report has evidently been required as information to the public concerning the financial condition and responsibility of the corporation. This information is intended as a security to persons dealing with the company. And whatever would materially affect their judgment in their dealings, should be regarded as a material representation in the report itself. But if a report proves to be untruthful in representations which would have no effect whatever upon the judgment or conduct of persons dealing with the corporation, such representations could not be consistently held to be material. And it must be by this criterion that the question of the liability of the persons signing the report should be determined, for if it contains untruthful statements, and those statements appear to be so entirely unimportant that they would not affect, in the least degree, the credit of the company or the conduct of persons dealing with it, then they cannot legally be held to be material misrepresentions. And such was the fact as to the representations concerning the amount of the capital stock of this corporation which had been paid in, and the statement that Mr. Seligman was one of its stockholders. These statements were unfounded to the extent only of $2,000, leaving, as the jury might have found the fact to be upon the evi-

dence, that $148,600 of the capital stock of the company had been paid in. And there is no reason for concluding that this amount would not as well, or completely, have maintained the credit and standing of the company as would the amount of $148,600. This slight discrepancy or difference in so large an amount would have no effect whatever upon the transactions or dealings of creditors with the corporation. And for that reason these statements could not be assumed to be, as they appear to have been in the charge of the court, materially false statements, rendering the officers who signed the report liable for its debts.

There was a probability certainly arising from the other evidence in the case that the amount actually paid in was considerably less, but that probability was not so well maintained as to entitle the court to assume the fact to be established by the evidence. But that part of the case should have been submitted to the jury. The evidence as to it was by no means conclusive, and they might on that evidence have found in favor of the defendant. There was evidence that the names of persons had been omitted who were the owners of stock in the company, but this omission by no possibility could have prejudiced the public or persons dealing with the company itself. It would have a tendency to reduce its credit instead of increasing it, which would work no injury whatever to persons in their dealings with the company. And for that reason the omission could not be material.

Other important questions have been presented by the evidence given upon the trial, but it is not necessary at the present time to consider whether the rulings made concerning them are capable of being sustained or not. For, as to this part of the case which has been considered, the court erroneously decided that the defendant was liable in case Mr. Bates had been discharged from the service of the company because of incompetency after the making of the agreement itself.

The judgment and order should be reversed and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment and order reversed and new trial ordered, with costs to defendant to abide event.