OLD COLONY BOOT AND SHOE COMPANY *vs.* PARKER-
SAMPSON-ADAMS COMPANY & others.

Suffolk.    March 9, 1903. — June 18, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Bankruptcy.    Corporation,* Liability of directors.    *Judgment.*

The liability of a director of a corporation under Pub. Sts. c. 106, § 60, cl. 2 (R. L.
c. 110, § 58, cl. 2), for debts of the corporation contracted between the time of
making a loan to a stockholder and the time of its repayment, is not provable
in bankruptcy against the estate of the director under the United States bank-
ruptcy act of 1898, because not a debt of the bankrupt, and § 63 *b* of the bank-
ruptcy act in regard to the liquidation of unliquidated claims does not make it
so.  Consequently under § 17 of the bankruptcy act the director's discharge in
bankruptcy after a creditor has obtained judgment against the corporation is
not a bar to a bill in equity to enforce the statutory liability of the director.

In a suit in equity to enforce the liability of a director of a corporation under Pub.
Sts. c. 106, § 60, cl. 2 (R. L. c. 110, § 58, cl. 2), for debts of the corporation con-
tracted between the time of making a loan to a stockholder and the time of its
repayment, the judgment against the corporation on the debt which is the
foundation of the plaintiff's claim is conclusive, and the director cannot show
in defence that when the action was brought and when the judgment was ren-
dered he was absent from the Commonwealth and had no knowledge of the
proceedings, and that the corporation had a good defence when judgment was
obtained against it by default.

BILL IN EQUITY, filed November 22, 1898, against the Parker-
Sampson-Adams Company, a corporation established under Pub.
Sts. c. 106, for carrying on the business of purchasing and sell-
ing boots and shoes, having its place of business in Boston, and
Horace B. Parker, Arch R. Sampson and John W. Adams, its
directors and stockholders, to enforce the alleged liability of the
individual defendants under Pub. Sts. c. 106, § 60, (R. L. c. 110,
§ 58.)

The case was heard by *Hammond,* J., who reported the facts
found by him, and made a decree that the defendant corporation
was indebted to the plaintiff in the sum of $1,600, that the debt
was contracted between the time at which the defendants Par-
ker, Sampson and Adams, as directors of the Parker-Sampson-
Adams Company, made and assented to loans to stockholders of
that company in excess of that debt and the time of the repay-
ment of the loans, that the defendants Parker, Sampson and

Adams were for this reason jointly and severally liable to the plaintiff for that debt, that the plaintiff recover costs against all the defendants, and that execution issue against them for the debt and costs. The defendants Parker and Sampson severally appealed.

The action at law against the Parker-Sampson-Adams Company was begun on April 5, 1898, judgment was entered against it on July 5, 1898, and an execution was returned unsatisfied on September 9, 1898. The present suit was instituted on November 22, 1898. On December 13, 1898, the defendant Sampson filed a voluntary petition in bankruptcy, on February 21, 1899, he filed in the present suit a suggestion of his petition in bankruptcy, and a certificate of his adjudication as a bankrupt. On May 9, 1899, the defendant Sampson was granted a discharge in bankruptcy, and on May 17, 1899, filed a certificate of his discharge in bankruptcy and pleaded it in bar in the present suit.

It was agreed by the parties, that the sum decreed to be paid to the plaintiff was the amount due it, if anything, at the date of the final decree, and that the only questions open on the appeal were (1) as to the discharge of the defendant Sampson from liability in this suit by reason of his discharge in bankruptcy, (2) as to whether or not the facts reported concerning the acts of the defendant Parker constituted a making of or assent to a loan by him to the defendants Sampson and Adams, and (3) as to whether the defendant Parker was discharged from liability by the fact that the plaintiff became a party to the assignment for the benefit of creditors, notwithstanding the subsequent recovery of judgment against the corporation.

*G. J. Tufts*, for Parker.

*E. K. Hall*, for Sampson.

*E. F. McClennen*, for the plaintiff.

BRALEY, J.   This bill in equity is brought against the defendant corporation and the individual defendants, who were its directors and stockholders, to establish their personal liability for a debt of the company to the plaintiff as shown by a judgment of the Superior Court entered July 5, 1898, upon which execution duly issued. All statutory requirements as to its service and return in order to fix the liability of stockholders and

directors having been fully complied with, the defendants were held liable and a decree in favor of the plaintiff was entered against them, and the case is here on a report of the facts by a single justice before whom it was tried.

By the agreement of the individual defendants set out in the report, and who alone defended the action, three questions are presented for our decision, which we proceed to consider in the order therein stated.

After judgment was recovered against the corporation, and this bill was filed, the defendant Sampson was adjudicated a bankrupt on his voluntary petition and obtained his discharge, which he has duly pleaded in bar of this suit, and if the claim of the plaintiff was a provable debt against his estate the bill as to him must be dismissed. By Pub. Sts. c. 106, § 60, under which this bill is brought, it is provided in clause two on which the decree is based that the president and directors shall be jointly and severally liable " For debts contracted between the time of making or assenting to a loan to a stockholder and the time of its repayment, to the extent of such loan." This liability is created wholly by statute and is unknown to the common law, and no form of procedure for its enforcement exists except that provided by the statute which creates it. The history of previous legislation may be briefly examined in order to determine the meaning and extent of the obligation.

The first statute creating this remedy appears in St. 1808, c. 65, § 6, where it was provided that after judgment against a corporation the issuing of execution thereon and demand on the president, treasurer or clerk for property to satisfy the same if none was shown or exhibited which could be taken in satisfaction, then it might be levied upon the " body or bodies, and real and personal estate or estates of any member or members of such corporation." From time to time, by statutory enactments, changes have been made as to the extent of the liability of stockholders and officers, and in the form of procedure to enforce the same. The different statutes and several modifications of the law up to and including St. 1870, c. 224, which was the last revision previous to Pub. Sts. c. 106, are collected by Field, J., in *Child* v. *Boston & Fairhaven Iron Works*, 137 Mass. 516, 517. It clearly appears from an examination of

these several enactments that from an early time the course of legislation shows the settled policy of the State to be, that in some form, and to a certain extent, stockholders and officers are to be held liable for the debts of the corporation of which they are members. In the case of the defendant Sampson who defends solely on the ground that his discharge in bankruptcy is a bar to maintaining this bill, it becomes necessary to determine whether this statutory liability can be considered a debt within the meaning of the law relating to insolvency or bankruptcy.

It was early held in *Ripley* v. *Sampson,* 10 Pick. 371, 372, which was a case where it was sought to charge the estate of a deceased stockholder in the hands of his administrator for a deficit in the funds of the corporation, that "the individual liability of stockholders, created by the statute of 1808, was of a particular and limited character, and could only be enforced in the manner pointed out by the statute. It did not constitute a charge upon the estate of a deceased stockholder"; and because it was not a debt the administrator could not apply the assets of the estate in payment. Following this case, in *Kelton* v. *Phillips,* 3 Met. 61, 62, it was decided that individual liability under the same statute, being of this particular and limited character and only to be enforced as outlined therein, was not a debt within the meaning of our insolvent act of 1838, c. 163, and hence was not provable against a stockholder in insolvency. See also *Stone* v. *Wiggin,* 5 Met. 316, 317; *Gray* v. *Coffin,* 9 Cush. 192, 199. From these decisions it appears that the liability created by the provisions of these statutes is not direct and does not make the indebtedness of the corporation the debt of the individual stockholder or of the officers, according to the class into which the claim of the creditor who seeks to enforce his debt may fall. He must first sue the corporation, and unless he gets judgment against it he cannot pursue either. And if he gets judgment then he can maintain such suit, only after the corporation neglects for thirty days after demand made, on execution, either to pay the judgment or to exhibit real or personal estate of the corporation liable to be taken on execution sufficient to satisfy the same, and the execution is returned unsatisfied.

The liability of the defendant arising in this case is for a wrong done, and consists in the misuse of the funds of the corporation which are primarily as between creditors and stockholders to be used for the payment of the debts of the corporation. And the obligation of the officer or stockholder to make the creditor whole does not arise until the wrong has been established and damages fixed by the decree on the bill brought for that purpose, though the decree may follow the judgment against the corporation in measuring the amount to be recovered. It is clear that under such conditions an action of contract will not lie, and the liability to pay must be held to be not only limited and collateral, but contingent on the failure of the corporation to satisfy the creditor and on proof that the stockholder or officer, as the case may be, has not complied with the statutory requirements applicable to manufacturing corporations of which they are members or officers. Whenever the question has arisen it has been held that such a liability cannot be classified as a debt and is not provable under our State insolvent law. *Bangs* v. *Lincoln*, 10 Gray, 600, and cases cited. *Lothrop* v. *Reed*, 13 Allen, 294, 296.

Under the bankruptcy act of 1867 (U. S. Rev. Sts. §§ 5067, 5068), such a claim would not have been provable because not a debt within the meaning of that act. *Fourth National Bank* v. *Francklyn*, 120 U. S. 747, 754. *James* v. *Atlantic Delaine Co.* 13 Fed. Cas. 300.

The bankruptcy act of 1898, § 63 (30 U. S. Sts. at Large, c. 541), permits the proof among others of " *a* Debts . . . (4) founded upon an open account, or upon a contract express or implied ", and provides that " *b* Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

It would seem that this clause does not provide for an additional class of liabilities, but for a method by which such of the liabilities described in clause *a* as are unliquidated may be liquidated and proved. We are of opinion that clause *b* does not mean anything more than the language used in the bankruptcy act of March 2, 1867, c. 176, § 19, that " Where the bankrupt is liable . . . for unliquidated damages arising

out of any contract or promise, or on account of any goods or chattels wrongfully taken, converted, or withheld, the court may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate," and that the liability of the defendant Sampson as a director does not arise out of any contractual obligation or promise and is not such an unliquidated claim. *Fourth National Bank* v. *Francklyn, ubi supra.* And by the express language of the act of 1898, § 17, (30 U. S. Sts. at Large, c. 541,) the bankrupt is not released by a discharge unless the claim is not only provable, but also a debt. Not being a provable debt at the time when his petition in bankruptcy was filed, the discharge of the defendant does not constitute a bar to the maintenance of the bill against him. *Barre National Bank* v. *Hingham Manuf. Co.* 127 Mass. 563, 568.

Different questions are presented by the defendant Parker, and it is first to be determined whether the facts set out in the report are sufficient to show that his acts as a director constituted a making, or assent by him to, a loan to a stockholder within the meaning of the statute. The evidence is not reported, but from the findings of fact it appears that the entire amount of capital stock which was fixed at $100,000 had been paid in cash and was on deposit in the name of the corporation, when of this amount the sum of $37,500 was lent to the individual defendants and one other stockholder in different sums and by checks payable to the individual order of each. When the money was paid out they were all at the office of the company and the checks were delivered to each at the same time. After the money had been so lent, the directors held a meeting at which all of the individual defendants were present, and it was then voted that these loans be ratified.

No other reasonable inference is open but that the defendant Parker knew that he and the other defendants were receiving the money of the corporation. And as the company does not appear to have been indebted to either of them, their taking of the money must stand on one of two grounds: either it was a wrongful appropriation of the funds of the corporation, or a loan to each one who received the various amounts specified by the checks and set out in the report. No sufficient reason appears

why the finding that each took the money as a loan should be disturbed.

Afterwards the defendant company, becoming financially embarrassed, made a voluntary assignment for the benefit of its creditors, to which the plaintiff assented, proved its claim and received a dividend. This instrument contained among other provisions a covenant or agreement that all creditors who assented to its terms should by so doing be held to accept whatever dividend might be paid in full satisfaction and discharge of their debts, and that the assignment could be pleaded in bar of any suit subsequently brought on such claims.

In the original suit brought by the plaintiff, after proof of its debt and receipt of a dividend, the defendant company appeared and in its answer set up the assignment as a bar to the maintenance of the claim. But when the case came on for trial in its order the defendant was defaulted and judgment for the plaintiff was thereafter entered on the default. At the time when the action was brought and when the case went to judgment, the defendant Parker was absent from the State and had no knowledge of the proceedings. Under his answer he now claims that it is open to him to show that the plaintiff's claim was discharged by its assent to the assignment, and there being no debt due it from the corporation, the judgment so obtained is not binding on him, and as the obtaining of such judgment is one of the conditions precedent to the maintenance of this bill, the decree against him was not warranted and must be reversed.

He further contends that this defence is open to him under St. 1883, c. 223, now R. L. c. 173, § 28, permitting an equitable defence to be made to an action at law. And in his argument he asks us either to distinguish this case from *Thayer* v. *New England Lithographic Steam Printing Co.* 108 Mass. 523, 528, or overrule that case upon the ground that the decision is not supported by previous cases cited in the opinion.

Originally the property of every stockholder might be directly levied on to satisfy an execution on a judgment against a domestic corporation of which he was a member. No opportunity was given him to appear or contest this liability until St. 1851, c. 315, § 1, re-enacted in Gen. Sts. c. 60, § 32, that for the first time provided that when a corporation was sued a summons was

to be left with the stockholder if it was sought to charge him with the payment of the debt in suit.   By § 2 there was but one trial, at which two issues were presented: indebtedness of the corporation to the plaintiff, and the ultimate liability of the stockholder to pay.   But the stockholder's defence was limited to showing that he was not liable for the debt, and he could not be heard to contest the issue between the corporation and the plaintiff.  *Robbins* v. *Justices of Superior Court*, 12 Gray, 225.   *Byers* v. *Franklin Coal Co.* 14 Allen, 470.   It was also provided in St. 1829, c. 53, § 11, (Rev. Sts. c. 38, § 29; Gen. Sts. c. 60, § 31,) that any officer of a manufacturing corporation who was " liable by the provisions of this act, to pay the debts of any such corporation " might be held in an action on the case brought by the creditor.   Suits by creditors against the company and the officer for the recovery of the sum claimed and demanded might be simultaneous, and could be prosecuted until the plaintiff obtained payment of his debt.   The option given to a creditor of a bill in equity instead of the other remedies first appears in St. 1829, c. 53, § 11, and is carried over into Rev. Sts. c. 38, § 31, but is left out in the codification in Gen. Sts. c. 60.

The law continued unchanged until St. 1862, c. 218, when the remedy of the creditor to determine the liability of officers or stockholders of a manufacturing corporation, and to reach and apply their property in payment of a debt, was finally limited to a bill in equity after judgment had first been obtained against the corporation and demand duly made on its officers to pay the amount due or exhibit real or personal estate of the corporation that might be taken on execution to satisfy the judgment.   The provisions of Gen. Sts. c. 60, §§ 31–34, inclusive, and all other inconsistent laws were repealed.   No provision, however, was made whereby a stockholder or officer could appear and defend the suit in the name of the corporation.   It was not until St. 1867, c. 36, § 1, re-enacted in St. 1870, c. 224, § 48, and in Pub. Sts. c. 106, § 70, that the qualified right to appear and defend in such a suit might be granted on petition to the court in which the case was pending.   *Byers* v. *Franklin Coal Co., ubi supra.* This final result of a long period of legislative action in which the liability of officers and stockholders for the debts and contracts of manufacturing corporations and the procedure to enforce

it has been worked out, since then has remained unaltered and is now. R. L. c. 110, §§ 58–68, inclusive. From this course of legislation it seems to have been the purpose, while not departing from this general policy, but which had been restricted to specific cases and confined to certain corporations, to hold stockholders and officers alike liable for the debts of the corporation under certain conditions. The opportunity to contest the primary debt is not to be treated as a matter of common right but a privilege to be had if at all only upon complying with the terms of the statute which confers it. The defendant Parker was not obliged to become a stockholder or director of the defendant company. But if he chose to do so he must be presumed to know the law under which it was organized and to assent not only to any liability which our statutes imposed upon him, but that creditors dealing with it would have a right to look to him under certain circumstances for payment of their debts which were due them from the corporation. And they could not legally be asked or required to do more than comply with the statutory conditions precedent to the maintenance of the suit against him, compliance with which would be all that was necessary to try the question whether he could be charged with their payment. If this defence can prevail it will read into the statute the absolute right of a stockholder or officer when sued in equity to attack the judgment on which the bill is founded where no such right is given him in terms, and cannot be held to arise by implication, when we consider its object and purpose, as shown by the history of like previous legislation. But in equity he stands no better. It has been held that in the absence of fraud or collusion a court of equity does not assume control over the judgment of a court of law either to set it aside, grant a new trial, or restrain by injunction proceedings to enforce the judgment. In this case, in order to make out an equitable defence of the nature relied on by the defendant he must bring himself within this principle. *Barton* v. *Radclyffe*, 149 Mass. 275, 280. The fact that he was absent from the inception to the termination of the suit at law, and had no knowledge of it and nothing more, and did not for this reason petition for leave to defend, is not enough to show that he was prevented from undertaking such a defence either because of fraud or of acci-

dent.   He must be presumed to have held his office of a director, and consented to loaning the money of the corporation, with all the burdens that attached either to the office or his conduct therein as defined and imposed by statute.   It cannot be legally or justly said as between the parties that a suit the ultimate purpose of which was to make him liable for his misconduct was an unforeseen or unexpected event.

The plaintiff cannot be called upon to lose a statutory right simply upon the ground that the defendant did not know of the suit at law when the latter was bound reasonably to anticipate and provide for the consequences that might arise from his illegal conduct.   If it be said that if he knew of the common law assignment, he might rely on its terms as relieving the corporation, and hence himself indirectly, he is not helped.   The corporation was not bound to plead its release under the assignment against the plaintiff who had not been paid in full.   By its terms it was anticipated that suits might be brought as the creditors were not fully paid, and such suits were not only deemed probable but guarded against in the provision that the assignment could be pleaded in bar as to all creditors who had assented to it and received a dividend.

If he intended to leave the State there is no greater hardship to him in holding that he should have provided in some way for such a probability than there would be in holding that the plaintiff who apparently did not know of his absence should not be allowed to retain his judgment when he had in good faith followed the statute.   The defendant in such a case, in order to avoid the judgment, must show something more than that as between himself and the plaintiff the equities are equal.

Independently, however, of these considerations the question cannot be treated as an open one under our decisions.   The Superior Court in which the judgment was rendered had jurisdiction of the subject matter and of the parties, and it is not claimed that the judgment was obtained by fraud or collusion. And whether the defendant is treated as a privy or a stranger to the judgment, it cannot be collaterally impeached or reversed in this suit.   *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385.   *Wood* v. *Mann,* 125 Mass. 319, 320.   *Fall River* v. *Riley,* 140 Mass. 488, 489.

The precise question appears to have arisen for the first time in *Gaskill* v. *Dudley*, 6 Met. 546, which was a suit in trespass brought by the plaintiff who was an inhabitant of a school district against which judgment had been recovered, and whose property had been levied upon in satisfaction of the execution.. At the trial the plaintiff attempted to impeach the judgment rendered in favor of the defendant by evidence which tended to show that it was erroneous, and it was held that such a defence was not open to him upon the ground that he was a member of the corporation which was sued in its aggregate name and all were liable as parties and original debtors. And in *Lane* v. *Weymouth School District*, 10 Met. 462, it was decided that the individual members of a school district which was sued had no right to appear and be heard in defence of an action against the district; and while there might be cases of individual hardship the burden arose because of their membership, and that having accepted the benefits they must also bear the burden,. and to allow any individual or a minority of the whole members to defend a suit against the corporation was to open the door to constant and protracted litigation, which would be a greater evil than for an individual to occasionally suffer a hardship by overtaxation. This principle was applied in *Holyoke Bank* v. *Goodman Paper Manuf. Co.* 9 Cush. 576, 582, 584, which was a suit brought by a creditor against a manufacturing corporation and some of its stockholders to charge them individually under St. 1851, c. 315, and the stockholders so summoned were not allowed to jointly defend the action. While in *Farnum* v. *Ballard Vale Machine Shop*, 12 Cush. 507, 509, under the same statute, the reasons why the judgment is to be deemed conclusive are stated; and it was said : " Before this statute, it is very clear, that individual members could not appear and defend, in the name of the corporation, without or against the authority and consent of the corporation, expressed in the regular mode, according to its organization. It would be contrary to first principles. A corporation is a body politic, a person in law, distinct from that of all its members, and may deal with them, sue them or be sued by them, as by other parties. If one member or set of members might appear and represent the corporation, any others may do the same, they may make different and inconsistent defences,

bind the corporation by their acts and admissions, against the will of the majority legally expressed, and thus lead to confusion and a conflict of rights. And this is settled upon authority, and in a stronger case than that of the manufacturing company, which is a strict close corporation, viz.: in case of a school district, in which, as in towns and parishes, the suit is deemed a suit against all the inhabitants, described by an aggregate designation, by a judgment in which, each and all are bound, and liable to execution." A similar decision was made in *Johnson* v. *Somerville Dyeing & Bleaching Co.* 15 Gray, 216, 218.

This question was last before this court in *Thayer* v. *New England Lithographic Steam Printing Co., ubi supra.* Following an unbroken line of authorities, the rule was reaffirmed in these words: "We believe the decisions in relation to individual liability for corporate debts have been, in all aspects in which the question has been presented, uniform in sustaining the conclusiveness of the judgment against the corporation, as establishing the existence of the debt for which it is rendered," and citing the cases to which we have referred. See to the same effect *Norfolk* v. *American Steam Gas Co.* 108 Mass. 404, 406. These two decisions were made under St. 1862, c. 218, re-enacted in St. 1870, c. 224, § 38, Pub. Sts. c. 106, § 60, which dealt with the liability of officers and stockholders. And as St. 1867, c. 36, §§ 1, 2, which permits stockholders and officers to intervene, was passed before the debts were contracted which were the subject of the suits, the cases are authority that though the act permits such intervention, yet when stockholders or officers do not, or cannot intervene to defend the original suit, the validity of the judgment is not affected. This rule is but the application of the general principle of the conclusiveness of judgments, and the only exception to be made is the one provided by statute.

The principle is not broken in upon by the case of *Brown* v. *Eastern Slate Co.* 134 Mass. 590, much relied on by the defendant Parker. At the time when the note sued on in that case was made it was delivered under an agreement with the corporation "that there should be no personal liability on the note," and whether made with the corporation or with stockholders it was held that the plaintiff could not pursue "the members of the corporation in a court of equity through and by means of a

transaction which bound him not to do so." No such agreement exists in the case at bar, and the cases are not parallel.

We find no sound legal reason for disturbing what has been apparently the settled law of the State as applied to proceedings of this kind, and it must be held that it is not open to the defendant Parker to impeach the judgment rendered against the corporation.

*Decree affirmed.*