NORTHERN PAC. RY. CO. v. CROWELL et al.

(District Court, D. New Jersey. October 17, 1917.)

1. CORPORATIONS ⊚⟷326—DIRECTORS—LIABILITY—STATUTES.

Laws Mont. 1909, c. 140, requiring every stock corporation, except banks, trust companies, and building and loan associations, to file annual reports, and declaring that, if any corporation shall fail to file such report, the directors shall be jointly and severally liable for all debts or

judgments of the corporation then existing or which may thereafter be incurred, is valid, and renders directors of a corporation liable for debts where the required report is not filed.

2. LIMITATION OF ACTIONS ⟨⟩⟩2(2)—STATUTE—WHAT LAW GOVERNS.

Laws Mont. 1909, c. 140, requiring stock corporations to file reports, declares that directors, in event of failure to file such reports, shall be liable for debts or judgments of the corporation. Rev. Codes Mont. §§ 6443, 6448, declare that the statutory period for actions on penalties shall be two years; but section 6471 declares that the periods of limitation prescribed shall not affect actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created by law, but that such action shall be brought within three years after discovery by the aggrieved party of the facts upon which the penalty or forfeiture or the liability arose. *Held* that, while ordinarily the law of the forum as to limitation of actions governs, yet where by statute a right of action is given which did not exist at common law, and the statute giving the right fixes the time within which it may be enforced, the time so fixed becomes a limitation on such right and will control, no matter in what forum the action is brought, and such limitation, though not contained in the statute giving the right of action, controls, provided it is directed to the newly created liability; and hence, in an action brought in the federal District Court for New Jersey to enforce directors' liability for failure of a corporation to file the required report, the three-year limitation prescribed by section 6471 governs, it being obvious that the limitation of three years was intended to apply to such action.

3. CORPORATIONS ⟨⟩⟩326—DIRECTORS—LIABILITY—STATUTE—"PENAL."

Laws Mont. 1909, c. 140, requiring stock corporations to file annual reports, and declaring that directors shall be liable for corporate debts in event of failure, is not a penal statute in the international sense, or in the sense in which the word "penal" is used in criminal law, but can be construed as penal only in changing the common-law liability of directors, and hence should not receive the same strict construction as a criminal statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Penal; Penal Laws.]

4. JUDGMENT ⟨⟩⟩828(1)—CONCLUSIVENESS—COLLATERAL ATTACK.

Under Const. U. S. art. 4, § 1, declaring that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, a judgment rendered in Montana against corporation cannot, in an action brought in the federal District Court for New Jersey on such judgment against the corporate directors, be attacked on the theory that it was erroneous, because sounding in tort, when plaintiff had already elected to sue on contract, for that question should have been raised in the Montana courts, and the judgment cannot thereafter be collaterally attacked.

5. CORPORATIONS ⟨⟩⟩348—DIRECTORS' LIABILITY—CONCLUSIVENESS OF JUDGMENT AGAINST CORPORATION.

Under Laws Mont. 1909, c. 140, declaring that corporate directors shall be liable for debts and judgments of the corporation, where the required annual report is not filed, directors, in an action to enforce their liability on a judgment against the corporation, cannot question it, on the ground that they did not have their day in court and were not served in the action in which judgment was rendered, for such judgment is binding on them where the court which rendered the same had jurisdiction of the corporation and the subject-matter; the only defenses available being that the persons sued as directors were in fact not directors, that the claim had been discharged, that the defendants had a set-off, or that the judgment was procured by fraud, etc.

⟨⟩⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. CORPORATIONS ⬦⟶340(3)—DIRECTORS' LIABILITY—STATUTE.

    Under Laws Mont. 1909, c. 140, requiring stock corporations to file annual reports, and declaring that in event of failure directors shall be jointly and severally liable for all debts or judgments of the corporation then existing or that may thereafter be in any wise incurred until report shall be made and filed, directors of a corporation are, where the required report was not filed, liable for judgment in tort rendered against the corporation; the statute not being restricted merely to debts, but specifically including judgments.

7. CORPORATIONS ⬦⟶340(3)—DIRECTORS' LIABILITY—STATUTE.

    The directors having 10 days between January 20th and 30th, inclusive, to file "exculpating affidavits," a judgment entered on January 29th makes them liable under such section, whether the default be regarded as complete on January 20th, in which case the judgment would be "thereafter incurred," or not complete until January 30th, in which case the judgment would be "then existing."

At Law. Action by the Northern Pacific Railway Company against R. Herbert Crowell and another. On motion to strike defendants' answer. Defenses stricken.

Pitney, Hardin & Skinner, of Newark, N. J., for plaintiff.
Lewis Starr, of Camden, N. J., for defendants.

DAVIS, District Judge. This is a suit to recover from the defendants, directors of the Chico Mining Company, a corporation organized under the laws of Montana, May 11, 1912, the amount of the judgment recovered against the said company in the district court of the Sixth judicial district of Montana. The defendants are residents of the state of New Jersey, and have been directors of the mining company from the date of its incorporation. Shortly after the incorporation of the company, it made a contract with the plaintiff to rent a steam shovel from it, with an option to purchase said shovel. The mining company did not exercise its option to purchase the shovel. Disputes arose between the railway company and the mining company, and in April, 1913, the railway company instituted proceedings against the mining company, apparently joining in the same complaint an action on contract and an action in tort. The mining company entered a demurrer to the complaint, whereupon it was amended, the plaintiff proceeding upon the tort. To this amended complaint an answer was filed March 28, 1914, and on April 21, 1914, the railway company filed its reply. Before the trial, but at just what time is not apparent, the attorneys of the mining company, with permission of the court, withdrew their appearance, and counsel for the defendants in the suit at bar in his brief states that:

    "On January 29, 1915, the case in Montana, between the railway company and the mining company, came on regularly for hearing. The mining company was neither present nor represented by counsel. Thereupon a jury was waived, and the case tried by the court, which found the issues in favor of the plaintiff, and assessed damages at the sum of $4,000, for which amount judgment was entered, together with costs, $180.50."

The purpose of the present suit, as above stated, is to recover the amount of said judgment from the defendants, directors of the mining company. The cause is before the court at this time on plaintiff's

motion to strike out defendants' answer. The determination of the motion involves two questions: (1) Does the statute upon which plaintiff's action is based impose liability upon the defendants? (2) If it does, have they pleaded a defense which shields them from liability?

[1] It is agreed by stipulation between counsel that the Montana statute (Laws Mont. 1909, page 217) provides as follows:

"Every corporation, having a capital stock, except banks, trust companies and building and loan associations, shall annually, within twenty days from and after the thirty-first day of December, file, in the office of the clerk of the county in which the principal place of business of such corporation is situated, a report which shall state the amount of the capital stock, the proportion thereof actually paid in and the amount thereof actually paid in cash and the amount issued, if any, in payment of property purchased and the amount of existing debts and also the names and addresses of the directors or trustees and of the president, vice president, general manager and secretary of the corporation. Such report shall be signed by the president and a majority of the directors, inclusive of the president, secretary or treasurer of such corporation. In the absence, or inability to act, of the president, the vice president may sign and verify such report. If any such corporation shall fail to file such report, directors of the corporation shall be, jointly and severally, liable for all debts or judgments of the corporation then existing, or which may thereafter be in anywise incurred until such report shall be made and filed: Provided, however, that if within ten days after such failure a director, or directors, shall make and file, as aforesaid, an affidavit or affidavits, stating that the failure was due to no fault or neglect of his or theirs, and stating, also, that, within the said twenty days, he or they requested the president or sufficient number of the other directors, whose residence was known to the affiants, to join them in making report, such director, or directors, shall not be liable under this section. If the required report be made and filed after the time herein specified, the directors shall not, on account of the prior failure to make report, be liable for the debts thereafter contracted. Where such corporation, on account of insolvency or for any other reason, has ceased to be a going concern and has ceased to voluntarily incur financial obligations, the directors may include a statement to that effect in their report, giving the reasons for the cessation of the corporate activities of such corporation, and, after two annual reports have been filed, the directors shall not be liable for a failure to file annual reports during such time as the disability of such corporation shall continue."

This statute in its original or amended form has been passed upon by the Supreme Court, the court of last resort, in Montana, and the directors have been held liable when their corporation has failed to file the required report. Gans v. Switzer, 9 Mont. 408, 24 Pac. 18; Daily v. Marshall, 47 Mont. 377, 133 Pac. 681; First National Bank of Missoula v. Cottonwood Land Co. et al., 51 Mont. 544, 154 Pac. 582.

Many states have passed statutes making directors of corporations liable for the debts thereof upon their failure to file annual reports setting forth their debts, etc. The acts, so far as I am aware, have all been held constitutional, wherever construed, and directors held liable, when they have failed to file exculpating affidavits, etc., to relieve from liability. The Montana statute is the only one brought to my attention making directors liable for "judgments" as well as for "debts." The plaintiff contends that "judgments" include tort actions when reduced to judgments. This is denied by defendants. This point will be discussed later. It seems to be perfectly clear, and to require no discus-

sion to establish, that the statute does impose liability upon the defendants.

[2] Has a defense sufficient to shield the defendants from liability been pleaded? The answer is based upon the following legal propositions variously stated in the "defenses" by the pleader:

1. The statute of limitations of New Jersey, and not that of Montana, is applicable to the case at bar.

The New Jersey statute provides that:

"All actions or informations which shall be brought or exhibited for any forfeiture, or cause upon any statute, made or to be made, the benefit and suit whereof is or shall be limited or given to the party aggrieved, shall be brought or exhibited within the space of two years, next after the offense committed or to be committed, or cause of action accrued, and not after." Comp. Stat. 3171, § 21.

A report was filed by the directors of the defendant company in January, 1913, for the year 1912, but that report did not include the indebtedness of the defendant company to the plaintiff, and was not a compliance with the requirement that the report should set forth "the amount of the existing debts," and therefore the statute began to run at that time, January 20, 1913, and this suit, which was instituted January 5, 1916, was not within two years after the cause of action accrued, and is therefore barred by the statute of limitations of New Jersey.

The plaintiff's reply is twofold. It contends that the statute of Montana controls as to limitation of actions, and that the failure to include a small item of indebtedness in the report, filed in good faith and in time, is not the equivalent in law of failure to file any report whatever and does not start the statute to running. Accordingly it asks that the answer in so far as it is based upon this ground be stricken out.

The Montana Code of 1907 (sections 6443 and 6448) provides, under the title of "Time of Commencing Actions," that the statutory period for actions on penalties shall be two years; but section 6471 of the Code (old section 554) provides that:

"This title does not affect actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached or the liability created."

The law of the forum as to the statute of limitations generally prevails, but—

"where by statute a right of action is given which did not exist by common law, and the statute giving the right fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition on such right, and will control, no matter in what forum the action is brought." The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358; Finnell v. Southern Kansas Railway Co. (C. C.) 33 Fed. 427; Theroux v. Northern Pacific Railway Co., 64 Fed. 84, 12 C. C. A. 52; Brunswick Terminal Co. v. National Bank, 99 Fed. 635, 40 C. C. A. 22; Whitman v. Citizens' Bank, 110 Fed. 504, 49 C. C. A. 122; 25 Cyc. 21.

But if the limitation is not contained in the statute giving the right of action, provided it is directed to the newly created liability "so specifically as to warrant saying that it qualified the right," it controls

just as though it were contained in the statute creating the right. In the case of Davis v. Mills, 194 U. S. 451, at page 454, 24 Sup. Ct. 692, at page 694, 48 L. Ed. 1067, the court said:

"But the fact that the limitation is contained in the same section or the same statute is material only as bearing on construction. It is merely a ground for saying that the limitation goes to the right created and accompanies the obligation everywhere. The same conclusion would be reached if the limitation was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right. If, then, the only question were one of construction and as to liabilities subsequently incurred, it would be a comparatively easy matter to say that section 554 of the Montana Code of Civil Procedure qualifies the liability imposed upon directors by section 451 of the Civil Code, and creates a condition to the corresponding right of action against them, which goes with it into any jurisdiction where the action may be brought."

Section 6471 of the Code, above referred to, is so specifically directed to the newly created liability, it seems to me, as to go everywhere with the right created just as though it were a part of the act creating the liability. The Montana statute, therefore, is controlling in this matter. Brunswick Terminal Co. v. National Bank, 99 Fed. 635, 40 C. C. A. 22. The case just cited is practically on all fours with the case at bar. The Supreme Court (178 U. S. 611, 20 Sup. Ct. 1029, 44 L. Ed. 1215) refused a writ of certiorari therein. The only question at issue was the question of which law as to limitations, lex fori or lex loci, controlled.

[3] Much is made in the brief for the defendants that this is a penal statute and should be strictly construed, and therefore it should be held that the statute began to run January 20, 1913, because the report filed for the year 1912 was defective. This is not a penal statute in the international sense, or in the sense in which the word "penal" is used in criminal law, and it is doubtful whether or not the New Jersey statute quoted is applicable at all to this class of cases. Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; Flowers v. Bartlett, 66 Minn. 213, 68 N. W. 976; Howell v. Roberts, 29 Neb. 483, 45 N. W. 923; Coy v. Jones, 30 Neb. 798, 47 N. W. 208, 10 L. R. A. 658; Fitzgerald v. Weidenbeck et al. (C. C.) 78 Fed. 695. There is no penalty in this case in the strict and proper sense. It is a withdrawal from the directors of the exemption from personal liability, which the statute under which the company was incorporated afforded them, because of the failure to file the report, or to take the other steps for their personal exemption required by the statute. As Judge Lochren, in the last-cited case, said:

"It is rather a case or condition where the corporate franchise by its own terms and limitations, and for a plain reason, ceases to afford to officers of the corporation, who disregard an enjoined duty, the exemption from personal liability which the franchise alone would otherwise afford in respect to specified debts contracted in an enterprise in which they were engaged, with others, for profit."

The character of this liability, or so-called penalty, has been passed upon by the Montana Supreme Court in the cases of Gans v. Switzer, 9 Mont. 402, 24 Pac. 18, Daily v. Marshall, 47 Mont. 377, 133 Pac. 681, and First National Bank of Missoula v. Cottonwood Land Co., 51

Mont. 544, 154 Pac. 582. In Gans v. Switzer, 9 Mont. at page 413, 24 Pac. at page 20, the court quoted with approval from Morawetz on Private Corporations, vol. 2 (2d Ed.) § 908, as follows:

"It is the general rule that this law is penal, and must be construed strictly. Providence Steam Engine Co. v. Hubbard, 101 U. S. 191 [25 L. Ed. 786]; Chase v. Curtis, 113 U. S. 457 [5 Sup. Ct. 554, 28 L. Ed. 1038]. Mr. Morawetz, in his valuable treatise on Private Corporations, considers the subject, and makes the following appropriate comments: 'It is not always quite clear what the courts mean to express by saying that statutes of this character are "penal"; and that they impose upon the directors a "penal liability." * * * Nor is the liability of the directors under these statutes penal in the sense in which the word "penal" is used in criminal law; it is not a penalty or fine imposed by the state for the infraction of a public law. * * * The statutes imposing this liability establish a new rule of private right, a rule which, although unknown to the common law, may be founded on sound principles of justice and expediency. The only reason why this liability is called "penal" appears to be that it does not exist at common law, and is neither created by contract, nor given as compensation for a direct and immediate wrong done by the directors to the creditors of the company.' * * * Even with this understanding, 'in construing penal statutes, we must not, by refining, defeat the obvious intent of the Legislature.' Potter's Dwarris on Statutes, 247. The law before us is clothed in clear and concise terms, and we think that the same end will be attained by the application of any canon of interpretation. There should be no difficulty in carrying out 'the true intent and meaning of the legislative assembly.' Under certain conditions the statute, in effect, declares that the trustees of the Helena Pressed Brick Company 'shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made.' There are no exceptions in this clause, and there does not appear to be any obscurity in the scope of the liability of the trustees, if the words 'shall be understood and construed according to the approved and common usage of the language.' "

In 47 Mont., at page 398, 133 Pac., at page 687, in the case of Daily v. Marshall, the court, speaking through Chief Justice Brantly, said:

"As already pointed out, the statute is not penal in the sense in which that term is generally used. It is so only in the sense that it creates a liability which was not known at the common law and therefore must be construed strictly. The very purpose of the legal device known as a corporation is to enable natural persons to engage in business enterprises through the agency of others without incurring personal liability. The extent of immunity is fixed by the law providing for the creation of the artificial body or person, and such a provision as the one in question, being a part of the law of creation, declares the immunity of those who manage the business, viz. the officers and directors, dependent upon their observance of the conditions imposed by it. They may render their immunity effective by doing this; otherwise, they are conclusively presumed to have assented to stand good as sureties for all the liabilities which they have permitted the corporation to assume. In considering the statute in 1894 (Comp. Stats. 1887, Fifth Div. § 460), the court in Fitzgerald v. Weidenbeck (C. C.) 76 Fed. 695, said: 'But, while the statutory liability of trustees has some of the characteristics of a penalty, and attaches upon such kind of default or omission of duty on the part of the trustees as is frequently in like statutes punished by the infliction of a penalty, yet, under this statute, such liability of the trustees is not a penalty, but the withdrawal, as to them, as a consequence of their failure to perform certain duties, of the exemption from personal liability which the statute allowing the incorporation of the company would otherwise afford them, and an allowance to the creditors of the corporation at the time of such default or during such omission of duty, of the further remedy of having the right to proceed in the collection of their debts, directly against the trustees from whom such exemption is withdrawn.' "

In the case of First National Bank of Missoula v. Cottonwood Land Co., supra, the court said:

"The words 'as sureties' (in the opinion of Daily v. Marshall, supra) might have been omitted, as they add nothing to the argument. The expression as it appears is an unfortunate one. * * * The purpose of requiring such a report is to furnish information to those who conduct business with the corporation. * * * If for any reason the directors fail or refuse to furnish such information in the manner required by law, any one becoming a creditor of the concern may rightly do so upon the faith of the individual responsibility of the directors. The liability thus imposed is joint and several, direct and primary. The creditor's right of action is not dependent upon the insolvency of the corporation, * * * and neither the corporation nor other directors need be joined in the action."

If the Montana statute of three years controls in this case, as it seems to me must be held, the suit was instituted within time, and it is unnecessary to decide whether or not the statute began to run January 20, 1913, or January 20, 1915. It, however, is doubtful that the failure to include in the report for the year 1912, filed in time in January, 1913, the alleged indebtedness of the company to the plaintiff, which at that time was unliquidated and the exact amount thereof not determined, would start the statute to running. Giddings v. Holter, 19 Mont. 263, 48 Pac. 8; Bonnell v. Griswold, 80 N. Y. 128; Whitaker v. Masterton, 106 N. Y. 277, 12 N. E. 604; Walton v. Godwin, 58 Hun, 87, 11 N. Y. Supp. 391; Ford River & Lumber Co. v. Perron, 148 Mich. 399, 111 N. W. 1074; 10 Cyc. 875. The mining company in good faith filed its report in time, and the most that can be said is that it was defective, and that some amount, not liquidated, was due the plaintiff by the mining company. The mining company, however, contended that nothing was due the plaintiff at that time. Whether or not an indebtedness as a fact did exist could not be definitely known until the case was adjudicated and judgment entered.

[4] 2. The plaintiff elected to sue in contract in April, 1913, and that election was binding upon it, and the defendants are not bound by the judgment record, based upon tort against the company in Montana, but may defend upon the merits, as though the case were being tried de novo.

The original complaint apparently contained elements of an action based upon both contract and tort. The mining company, therefore, demurred, and the complaint was amended, and judgment was thereafter rendered against said company, based upon the tort. It is not clear, as counsel for defendants contend, that the plaintiff waived the tort and based its original action on contract, and, even if it did, that point should have been raised in the Montana court, and not here. The statute makes the directors liable for "judgments," as well as for "debts," and the judgment stands in the Montana court unappealed from. Counsel cites as the leading authority for his contention the case of Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038. Two questions arise here: First, whether or not full faith and credit must be given in New Jersey to the judgment secured in Montana, the same faith and credit that the judgment receives in that state; second, if the first question is answered in the affirmative, are the defendants, directors of the Chico Mining Company, bound by the judgment against that

company, so that they may not attack the judgment collaterally and plead the merits of the case, disregarding the judgment?

The Constitution of the United States (article 4, § 1) provides that:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."

This provision applies to judgments—"judicial proceedings." Under the authority of the above provision the same faith and credit should be given to a judgment in another state as in the state in which it was rendered, and the only grounds for impeachment of a judgment of another state are that the court was without jurisdiction of the subject-matter or of the person, or that the judgment was procured by fraud, perjury or collusion. Irregularities which do not show want of jurisdiction, or fraud, or collusion are not ground for collateral attack. 23 Cyc. pp. 1561, 1576, 1588; Jardine v. Reichert, 39 N. J. Law, 165; Anthony v. Wilson, 74 N. J. Law, 630, 65 Atl. 988; Elliott v. Peirsol, 1 Pet. (26 U. S.) 328, 7 L. Ed. 164; Christmas v. Russell, 5 Wall. (72 U. S.) 290, 18 L. Ed. 475; Maxwell v. Stewart, 21 Wall. (82 U. S.) 71, 22 Wall. 77, 22 L. Ed. 564; Laing v. Rigney, 160 U. S. 531, 16 Sup. Ct. 366, 40 L. Ed. 525; Conway v. Ellison, 14 Ark. 360; Nunn v. Sturges, 22 Ark. 389; Davidson v. Sharpe, 28 N. C. 14; Anderson v. Fry, 6 Ind. 76; Norwood v. Cobb, 20 Tex. 588; McFarland v. White, 13 La. Ann. 394; Gulick v. Loder, 13 N. J. Law, 68, 23 Am. Dec. 711; Royal Arcanum v. Carley, 52 N. J. Eq. 642, 29 Atl. 813; Wood v. Mobile, 107 Fed. 846, 47 C. C. A. 9; United States v. Eisenbeis, 112 Fed. 190, 50 C. C. A. 179. The pleadings contain nothing showing want of jurisdiction of the subject-matter, or of the mining company, the defendant, or showing fraud, perjury, or collusion. The judgment, therefore, may not be attacked collaterally, and the defendant may not go back of the judgment and defend on the merits. That might have been done in Montana, but may not here. The judgment under the pleadings is conclusive as far as it goes. When it became final in Montana, the mining company became bound by it in this court. It is res judicata here as to the company.

[5, 6] Are the directors bound by the judgment against their corporation? Is there a distinction in this respect between the corporation and the directors? The defendants became directors with the knowledge that, if the corporation failed to file the annual report required by law, they were liable directly and primarily, and in becoming directors they consented to become responsible, and assumed this liability, and a judgment against the company is binding upon them. They may, of course, show in defense that the court in which the judgment was recovered was without jurisdiction of the person or subject-matter; that they are not directors; that the claim has been discharged by them, or other directors; that they have a set-off; that the judgment was procured by fraud, perjury, or collusion, etc. In absence of such defense, they are bound by the judgment. Stevens v. Hein, 37 App. Div. 542, 55 N. Y. Supp. 491; Converse v. Ætna National Bank, 79 Conn. 163, 64 Atl. 341, 7 Ann. Cas. 75; Swing v. Consolidated Fruit Jar Co., 74 N. J. Law, 145, 63 Atl. 899; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; Hancock National Bank v. Far-

num, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Old Colony Boot & Shoe Co. v. Adams Co., 183 Mass. 557, 67 N. E. 870.

Counsel for defendants contends that a cause of action based upon the judgment cannot be sustained against either the corporation or defendants, because the judgment is based upon a tortious action, and that the statute simply meant to confer upon a creditor the right to alternative action, either upon the debt or judgment rendered thereon, and cites Chase v. Curtis, supra, as sustaining his views. The court in that case was construing a New York statute, and followed the construction put upon it by the Court of Appeals of that state. That statute made trustees liable for all debts existing and thereafter contracted before the filing of the report, upon the failure of the corporation to file said report. A judgment was secured against the corporation for a tort, and suit was brought thereon against the trustees, on the theory that after the tortious act became a judgment it was a debt within the meaning of the statute. What the court held was:

"That no right of action could arise upon the judgment itself, but upon the debt alone, on which the judgment was founded; * * * that the judgment was, as against the trustee, evidence, neither conclusive nor prima facie, of the existence of a debt due from the corporation, for the payment of which they could be charged." "The creditors to be protected [by requiring the report to be filed] are those only who become such by voluntary transactions, in reference to which, for their benefit, the information becomes important as to the debts of the company."

In other words, a judgment does not change the character of the obligation, which is simply merged in the judgment. A tort, when merged into a judgment, does not become a debt ex contractu, based upon a "voluntary transaction." Consequently, in an action based upon a judgment against trustees or directors—who are liable for the debts ex contractu only of a corporation—they should be allowed to go behind the judgment and show that it is for a tort and they are not liable. A judgment under such an act is not evidence, conclusive or prima facie, of an obligation of directors. Under that act, in the state of New York the trustees could go behind the judgment, which was for a tort, and show that they were not bound by the judgment.

This does not meet the situation in the present case. The statute makes the directors responsible for judgments thereafter incurred, as well as for debts. A great many states have statutes making directors liable for debts; but the Montana statute is sui generis, in that it alone makes directors liable for judgments, as well as for debts. Counsel for defendants argues that, when the Legislature of Montana amended the act in 1907, and for the first time made directors liable for "judgments," it simply meant to say that a director was liable for the debts of the corporation after they had been reduced to judgment. A suit would then be based upon a judgment, whereas before it would be based upon a debt. Litigants could and did do that before the amendment. "Judgments" would in that case be without meaning in the statute, and the amendment added nothing. Either that view must be taken, or the Legislature meant to make directors liable for the torts of the corporation, which had been reduced to judgment. The plain interpretation

of the language would indicate that such was its intention. It was perfectly clear, before the addition of the word "Judgments" to the statute, that directors were liable for the debts of the corporation, upon its failure to file said report, and for judgments based upon its debts. It must have been intended to increase the liability of directors by adding judgments, including torts, to the liability already existing at the time of the amendment. The plain interpretation of the language forces this conclusion. The provision in the statute requiring such reports to be filed annually is intended for the protection of creditors, and the added liability, making directors liable for judgments based upon torts, is another inducement or pressure to force directors to see that the report is filed in order that creditors or prospective creditors may ascertain the financial responsibility of the corporation. Inherently there is no more reason why directors, charged with the management of the corporation, should be liable for the debts of the corporation arising from the use of a shovel than for the torts of the corporation arising from an injury to that shovel by the negligence of its servants, acting within the scope of their authority and in the exercise of corporate powers.

The directors, who presumably knew the law making them liable for debts and judgments of the corporation thereafter incurred upon failure of the corporation to file the report required by the statute, in legal effect consented to the same, and cannot now complain. This was one of the conditions imposed by the statute upon which the corporation was permitted to come into existence. The defendants, with others, associated themselves together in a corporation for profit, because they believed it would be mutually advantageous for them to do so. They may not be permitted to reap the advantages given by the statute, and escape the disadvantages imposed by the statute upon their failure to perform duties prescribed by the statute for the benefit of creditors, whose confidence in the integrity of the corporation may be based upon their belief in the faithful performance of those duties and the responsibility of its directors. The argument that the defendants were not residents of Montana, were not in the state during the trial, were not served in the original action, and so did not have their day in court, is without merit. To this they agreed in becoming directors. Hawkins v. Glenn, supra; Hancock National Bank v. Farnum, supra; Bernheimer v. Converse, supra; Gilson v. Appleby, 79 N. J. Eq. 590, 81 Atl. 925; Converse v. Hamill, supra.

[7] 3. The judgment against the company was not in existence at the time default was made in filing the report. The report should have been filed on or before January 20, 1915, and the judgment was not entered until January 29, 1915. The plaintiff replies that the default was not complete until ten days after January 20, 1915, the time within which the directors might file affidavits relieving them from liability, and therefore the judgment was in existence before default was complete. I am not impressed with the soundness of the plaintiff's argument. The statute provides that, upon failure to file said report, the "directors shall be jointly and severally liable for all debts or judgments of the corporation then existing, or which may thereafter be in any wise incurred until such report shall be made and filed." The word

"incurred," it is argued, is not applicable to judgments, but applies more particularly to debts or other pecuniary obligations, either liquidated or otherwise, and not to the entry of a judgment based thereon. Assuming that the word "judgments" refers to or includes tort liabilities which have been reduced to judgments, then the statute covers this case, as being a judgment "thereafter incurred," in accordance with the contention of defendants, or "then existing," according to plaintiff's view, the failure not being complete until the time had expired for the directors to file "exculpatory affidavits," on January 30, 1915. If the word does not include liabilities for torts which have been reduced to judgments, the plaintiff cannot sustain its action. In my opinion, "judgments," as used in the statute, includes those rendered in tort actions.

It follows that the "defenses" pleaded in the amended answer, from the "first defense" to the "tenth defense," inclusive, must be stricken out, for they are all based upon the above principles pleaded by defendants as a defense to shield them from liability.